# EXHIBIT B



January 30, 2025

**VIA EMAIL**

U.S. DOGE Service
Office of Management and Budget
725 17th Street NW, Suite 9272
Washington, DC 20503
USDS@omb.eop.gov
OMBFOIA@omb.eop.gov

**Re: Expedited Freedom of Information Act Request**

Dear FOIA Officer(s):

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the implementing regulations of your agency, American Oversight makes the following request for records.

On January 24, 2025, President Trump removed inspectors general from many federal agencies.[1] These removals may violate federal law, which requires the White House to provide Congress 30 days' notice of any intent to fire a Senate-confirmed inspector general.[2] American Oversight seeks records with the potential to shed light on these actions.

**Requested Records**

American Oversight requests that your agency produce the following records within twenty business days:

> All records reflecting communications (including emails, email attachments, text messages, messages on messaging platforms (such as Signal, Slack, GChat or Google Hangouts, Lync, Skype, or WhatsApp), telephone call logs, calendar invitations, calendar entries, meeting notices, meeting agendas, informational material, draft legislation, talking points, any handwritten or electronic notes taken during any oral communications, summaries of any oral communications, or other materials) between (a) any of the officials listed below and (b) the external individuals and entities listed below.
>
> USDS Officials:
>   i.  Elon Musk

---

[1] David Nakamura et al., *Trump Outs at Least 15 Independent Inspectors General in Late-Night Purge*, Wash. Post (Updated Jan. 25, 2025, 11:54 AM), https://www.washingtonpost.com/politics/2025/01/24/trump-fire-inspectors-general-federal-agencies/.
[2] *Id.*

  1030 15th Street NW, Suite B255, Washington, DC 20005   |   AmericanOversight.org

    ii. Anyone serving as Elon Musk's chief of staff, secretary, scheduler, assistant, senior advisor, and/or special advisor

External Entities:
1. Anyone communicating from the House of Representatives, including but not limited to email addresses ending in @mail.house.gov
2. Anyone communicating from the office of Senator Chuck Grassley (including email communications from email addresses ending in @grassley.senate.gov)
3. Anyone communicating from the office of Senator Josh Hawley (including email communications from email addresses ending in @hawley.senate.gov)
4. Anyone communicating from the office of Senator Rand Paul (including email communications from email addresses ending in @paul.senate.gov)
5. Anyone communication from the Office of Senator Gary Peters (including email communications from email addresses ending in @peters.senate.gov)
6. Anyone communicating from the Senate Homeland Security and Governmental Affairs Committee (including email communications from email addresses ending in @hsgac.senate.gov)
7. Anyone communicating from the Office of Senator Dick Durbin (including from email addresses ending in @durbin.senate.gov)
8. Anyone communicating from the Senate Committee on the Judiciary (including from email addresses ending in @judiciary.senate.gov)
9. Anyone communicating from the office of Senator James Risch (including email communications from email addresses ending in @risch.senate.gov)
10. Anyone communicating from the office of Senator Jeanne Shaheen (including email communications from email addresses ending in @shaheen.senate.gov)
11. Anyone communicating from the Senate Foreign Relations Committee (including email communications from email addresses ending in @foreign.senate.gov)
12. Anyone communicating from the office of Senator Ted Cruz (including email communications from email addresses ending in @cruz.senate.gov)
13. Anyone communicating from the office of Senator Maria Cantwell (including email communications from email addresses ending in @cantwell.senate.gov)
14. Anyone communicating from the Senate Commerce, Science, and Transportation Committee (including email communications from email addresses ending in @commerce.senate.gov)
15. Anyone communicating from the office of Senator Tim Scott (including email communications from email addresses ending in @scott.senate.gov)
16. Anyone communicating from the office of Senator Elizabeth Warren (including email communications from email addresses ending in @warren.senate.gov)
17. Anyone communicating from the Senate Banking, Housing, and Urban Affairs Committee (including email communications from email addresses ending in @banking.senate.gov)

OMB-25-0253

18. Anyone communicating from the office of Senator Moore Capito (including email communications from email addresses ending in @capito.senate.gov)
19. Anyone communicating from the office of Senator Sheldon Whitehouse (including email communications from email addresses ending in @whitehouse.senate.gov)
20. Anyone communicating from the Senate Environment and Public Works Committee (including email communications from email addresses ending in @epw.senate.gov)
21. Anyone communicating from the office of Senator Bill Cassidy (including email communications from email addresses ending in @cassidy.senate.gov)
22. Anyone communicating from the office of Senator Bernie Sanders (including email communications from email addresses ending in @sanders.senate.gov)
23. Anyone communicating from the Senate Health, Education, Labor, and Pensions Committee (including email communications from email addresses ending in @help.senate.gov)
24. Anyone communicating from the office of Senator Mike Crapo (including email communications from email addresses ending in @crapo.senate.gov)
25. Anyone communicating from the office of Senator Ron Wyden (including email communications from email addresses ending in @wyden.senate.gov)
26. Anyone communicating from the Senate Finance Committee (including email communications from email addresses ending in @finance.senate.gov)
27. Anyone communicating from the office of Senator Roger Wicker (including email communications from email addresses ending in @wicker.senate.gov)
28. Anyone communicating from the office of Senator Jack Reed (including email communications from email addresses ending in @reed.senate.gov)
29. Anyone communicating from the Senate Armed Services Committee (including email communications from email addresses ending in @armed-services.senate.gov)
30. Anyone communicating from the office of Senator Jerry Moran (including email communications from email addresses ending in @moran.senate.gov)
31. Anyone communicating from the office of Senator Richard Blumenthal (including email communications from email addresses ending in @blumenthal.senate.gov)
32. Anyone communicating from the Senate Veterans' Affairs Committee (including email communications from email addresses ending in @veterans.senate.gov)
33. Anyone communicating from the office of Senator Mike Lee (including email communications from email addresses ending in @lee.senate.gov)

OMB-25-0253

34. Anyone communicating from the office of Senator Martin Heinrich (including email communications from email addresses ending in @heinrich.senate.gov)
35. Anyone communicating from the Senate Energy and Natural Resources Committee (including email communications from email addresses ending in @energy.senate.gov)
36. Anyone communicating from the office of Senator John Boozman (including email communications from email addresses ending in @boozman.senate.gov)
37. Anyone communicating from the office of Senator Amy Klobuchar (including email communications from email addresses ending in @klobuchar.senate.gov)
38. Anyone communicating from the Senate Agriculture, Nutrition, and Forestry Committee (including email communications from email addresses ending in @agriculture.senate.gov)
39. Anyone communicating from the office of Senator Joni Ernst (including email communications from email addresses ending in @ernst.senate.gov)
40. Anyone communicating from the office of Senator Edward Markey (including email communications from email addresses ending in @markey.senate.gov)
41. Anyone communicating from the Senate Small Business and Entrepreneurship Committee (including email communications from email addresses ending in @sbc.senate.gov)

**Please provide all responsive records from January 20, 2025, through January 28, 2025.**

**Fee Waiver Request**

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and your agency's regulations, American Oversight requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures will likely contribute to a better understanding of relevant government procedures by the general public in a significant way. Moreover, the request is for non-commercial purposes.

American Oversight requests a waiver of fees because disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding of operations or activities of the government."[3] The public has a significant interest in the firing of multiple inspectors general that took place overnight in the first week of the Trump administration. Records with the potential to shed light on this matter would contribute significantly to public understanding of operations of the federal government, including what communications agency officials may have had in the time leading up to the mass termination. American Oversight is committed to transparency and makes the responses agencies provide to FOIA requests publicly

---

[3] 5 U.S.C. § 552(a)(4)(A)(iii).

available, and the public's understanding of the government's activities would be enhanced through American Oversight's analysis and publication of these records.

This request "is not primarily in the commercial interest of the requester."[4] In fact, as a 501(c)(3) nonprofit, American Oversight does not have a commercial purpose, and the release of the information requested is not in American Oversight's commercial interest. American Oversight's mission is to promote transparency in government, to educate the public about government activities, and to ensure the accountability of government officials. American Oversight uses the information gathered, and its analysis of it, to educate the public through reports, press releases, or other media. American Oversight also makes materials it gathers available on its public website and promotes their availability on social media platforms, such as Facebook and X (formerly Twitter).[5]

American Oversight has also demonstrated its commitment to the public disclosure of documents and creation of editorial content through regular substantive analyses posted to its website.[6] Examples reflecting this commitment include the posting of records related to the first Trump Administration's contacts with Ukraine and analyses of those contacts;[7] posting records and editorial content about the federal government's response to the COVID-19 pandemic;[8] posting records received as part of American Oversight's "Audit the Wall" project to gather and analyze information related to the first Trump administration's proposed construction of a barrier along the U.S.-Mexico border, and analyses of what those records reveal;[9] the posting of records related to an ethics waiver received by a senior Department of Justice attorney and an analysis of what those records demonstrated regarding the Department's process for issuing such waivers;[10]

---

[4] *Id.*
[5] American Oversight currently has approximately 16,000 followers on Facebook and 96,500 followers on X (formerly Twitter). American Oversight, Facebook, https://www.facebook.com/weareoversight/ (last visited Jan. 27, 2025); American Oversight (@weareoversight), X (formerly Twitter), https://x.com/weareoversight (last visited Jan. 27, 2025).
[6] *See generally News,* American Oversight, https://www.americanoversight.org/blog.
[7] *Trump Administration's Contacts with Ukraine,* American Oversight, https://www.americanoversight.org/investigation/the-trump-administrations-contacts-with-ukraine.
[8] *See generally The Trump Administration's Response to Coronavirus,* American Oversight, https://www.americanoversight.org/investigation/the-trump-administrations-response-to-coronavirus; *see, e.g., CDC Calendars from 2018 and 2019: Pandemic-Related Briefings and Meetings,* American Oversight, https://www.americanoversight.org/cdc-calendars-from-2018-and-2019-pandemic-related-briefings-and-meetings.
[9] *See generally Audit the Wall,* American Oversight, https://www.americanoversight.org/investigation/audit-the-wall; *see, e.g., Border Wall Investigation Report: No Plans, No Funding, No Timeline, No Wall,* American Oversight, https://www.americanoversight.org/border-wall-investigation-report-no-plans-no-funding-no-timeline-no-wall.
[10] *DOJ Records Relating to Solicitor General Noel Francisco's Recusal,* American Oversight, https://www.americanoversight.org/document/doj-civil-division-response-noel-francisco-compliance; *Francisco & the Travel Ban: What We Learned from the DOJ*

and posting records and analysis of federal officials' use of taxpayer dollars to charter private aircraft or use government planes for unofficial business.[11]

Accordingly, American Oversight qualifies for a fee waiver.

**Application for Expedited Processing**

Pursuant to 5 U.S.C. § 552(a)(6)(E)(1) and your agency's regulations, American Oversight requests that your agency expedite the processing of this request.

On behalf of American Oversight, I <u>certify</u> to be true and correct to the best of my knowledge and belief that there is a compelling need for expedited processing of the attached requests because the information requested is urgently needed in order to inform the public about an actual or alleged Federal Government activity and American Oversight is primarily engaged in disseminating the information it receives from public records requests to the public, as its primary professional activity or occupation is information dissemination. *See* 5 U.S.C. § 552(a)(6)(E)(5)(ii) and your agency's corresponding expedition regulations.

The voluminous media coverage regarding what has been termed the "Friday Night Massacre" and admissions from Trump's own political allies that President Trump did not follow the requirements of the Inspector General Act and his actions were "technically" illegal demonstrate that there is clearly a compelling need to inform the public about the circumstances surrounding these very sudden firings.[12] The mass

---

*Documents*, American Oversight, https://www.americanoversight.org/francisco-the-travel-ban-what-we-learned-from-the-doj-documents.

[11] *See generally Swamp Airlines: Chartered Jets at Taxpayer Expense*, American Oversight, https://www.americanoversight.org/investigation/swamp-airlines-private-jets-taxpayer-expense; *see, e.g., New Information on Pompeo's 2017 Trips to His Home State*, American Oversight, https://www.americanoversight.org/new-information-on-pompeos-2017-trips-to-his-home-state.

[12] *See, e.g.,* Rebecca Beitsch, *Trump IG Firings Leave In Doubt Future of Oversight*, The Hill (Jan. 28, 2025, 6:00 AM ET), https://thehill.com/homenews/administration/5109677-trump-inspectors-general-firings-oversight/; Manu Raju et al., *Trump Fires Inspectors General From More than a Dozen Federal Agencies*, CNN (updated Jan. 25, 2025, 10:59 PM EST), https://www.cnn.com/2025/01/25/politics/trump-fires-inspectors-general/index.html; David Nakamura, Lisa Rein & Matt Viser, *Trump Defends Ousting at Least 15 Independent Inspectors General in Late-Night Purge*, Wash. Post (updated Jan. 27, 2025, 9:40 PM EST), https://www.washingtonpost.com/politics/2025/01/24/trump-fire-inspectors-general-federal-agencies/; Lucia Suarez Sang, Scott MacFarlane & Nancy Cordes, *Trump Fires Multiple Federal Inspectors General in Overnight Purge*, CBS News (updated Jan. 27, 2025, 10:47 AM EST), https://www.cbsnews.com/news/trump-federal-inspectors-general-fired/; Rebecca Beitsch, *Bipartisan Senators Demand Trump Explanation for IG Firings*, The Hill (Jan. 28, 2025, 2:46 PM ET), https://thehill.com/homenews/senate/5111427-senators-explanation-trump-ig-firings/; Nikolas Lanum, *Inspector General Dismissed by Trump*

removal of these inspectors general has drawn a flood of both national and international media coverage,[13] and as Senators Grassley and Durbin wrote in a letter to the White House, these firings are "a matter of public . . . accountability and ensuring the public's confidence in the Inspector General community."[14] Given the importance of the position of the independent inspectors general to "rooting out waste, fraud, abuse, and misconduct within the Executive Branch bureaucracy" and the open question as to whether "the inspectors general were fired for legitimate reasons," the American public is entitled to records responsive to American Oversight's requests centered on the lead up to the mass firings. The public urgently needs the information American Oversight has requested so that citizens can inform themselves and engage with their senators or representatives who have the power to investigate and "assure Congress and the public that the termination is due to real concerns about the Inspector General's ability to carry out their mission,"[15] or take action should that not be the case. American Oversight's and the public's urgent, compelling need for this information is clear.

I further certify that American Oversight's primary professional activity and occupation is disseminating information to the public. American Oversight's mission is to promote transparency in government, to educate the public about government activities, and to ensure the accountability of government officials. Each component of this mission is primarily achieved through disseminating records and information to the public obtained from government officials and offices, including by direct publication of those records as well as creation and publication of editorial content relying on information reflected in those records.

---

*Calls Mass Firings a Threat to Democracy*, Fox News (Jan. 27, 2025, 1:16 PM EST), https://www.foxnews.com/media/inspector-general-dismissed-trump-calls-mass-firings-threat-democracy; Charlie Savage, *Fired Inspectors General Raise Alarms as Trump Administration Moves to Finalize Purge*, N.Y. Times, Jan. 27, 2025, https://www.nytimes.com/2025/01/27/us/politics/trump-inspectors-general-fired.html; Nandita Bose & Ismail Shakil, *Trump's Firing of Independent Watchdog Officials Draws Criticism*, Reuters (Jan. 25, 2025, 9:14 PM EST), https://www.reuters.com/world/us/trump-fires-least-12-independent-inspectors-general-washington-post-reports-2025-01-25/; Holly Honderich, *Trump Fires At Least a Dozen Government Watchdogs*, BBC, Jan. 25, 2025, https://www.bbc.com/news/articles/c5yveml59jlo.

[13] *See id. See also* Chris McGreal, *Trump Condemned over 'Blatantly Illegal' Firings of Watchdog Chiefs*, The Guardian (Jan. 28, 2025, 4:00 EST); Hailey Fuchs, *Grassley, Durbin Demand Answers on Inspectors General Firings*, Politico (Jan. 28, 2025, 2:23 PM ET), https://www.politico.com/live-updates/2025/01/28/congress/grassley-durbin-inspector-general-firings-00201024.

[14] *See* Fuchs, *supra* n. 14.

[15] Letter from Senators Charles E. Grassley and Richard J. Durbin to President Donald J. Trump (Jan. 28, 2025), *available at* https://www.grassley.senate.gov/imo/media/doc/grassley_durbin_to_djt_-_ig_removals.pdf.

Indeed, similar to other organizations that have been found to satisfy the criteria necessary to qualify for expedition,[16] American Oversight "'gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience.'"[17] American Oversight uses the information gathered, and its analysis of it, to educate the public through reports, press releases, and other media. American Oversight also makes materials it gathers available on its public website and promotes their availability on social media platforms, such as Facebook and X (formerly Twitter).[18] As discussed previously, American Oversight has demonstrated its commitment to the public disclosure of documents and creation of editorial content.[19] These functions comprise American Oversight's core, primary activities.

Accordingly, American Oversight's request satisfies the criteria for expedition.

**Guidance Regarding the Search & Processing of Requested Records**

In connection with its request for records, American Oversight provides the following guidance regarding the scope of the records sought and the search and processing of records:

---

[16] *See ACLU v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 30–31 (D.D.C. 2004); *Electronic Privacy Info. Ctr. v. Dep't of Defense* ("EPIC"), 241 F. Supp. 2d 5, 15 (D.D.C. 2003).
[17] *ACLU*, 321 F. Supp. 2d at 29 n.5 (quoting *EPIC*, 241 F. Supp. 2d at 11).
[18] American Oversight currently has approximately 16,000 followers on Facebook and 96,400 followers on X (formerly Twitter). American Oversight, FACEBOOK, https://www.facebook.com/weareoversight (last visited Jan. 28, 2025); American Oversight (@weareoversight), X (formerly Twitter), https://x.com/weareoversight (last visited Jan. 28, 2025).
[19] *See generally News*, AMERICAN OVERSIGHT, https://www.americanoversight.org/blog; *see, e.g., DOJ Civil Division Response Noel Francisco Compliance*, AMERICAN OVERSIGHT, https://www.americanoversight.org/document/doj-civil-division-response-noel-francisco-compliance; *Francisco & the Travel Ban: What We Learned from the DOJ Documents*, AMERICAN OVERSIGHT, https://www.americanoversight.org/francisco-the-travel-ban-what-we-learned-from-the-doj-documents; *Audit the Wall*, AMERICAN OVERSIGHT, https://www.americanoversight.org/investigation/audit-the-wall; *Border Wall Investigation Report: No Plans, No Funding, No Timeline, No Wall*, AMERICAN OVERSIGHT, https://www.americanoversight.org/border-wall-investigation-report-no-plans-no-funding-no-timeline-no-wall; *Documents Reveal Ben Carson Jr.'s Attempts to Use His Influence at HUD to Help His Business*, AMERICAN OVERSIGHT, https://www.americanoversight.org/documents-reveal-ben-carson-jr-s-attempts-to-use-his-influence-at-hud-to-help-his-business; *Investigating the Trump Administration's Efforts to Sell Nuclear Technology to Saudi Arabia*, AMERICAN OVERSIGHT, https://www.americanoversight.org/investigating-the-trump-administrations-efforts-to-sell-nuclear-technology-to-saudi-arabia; *Sessions' Letter Shows DOJ Acted On Trump's Authoritarian Demand to Investigate Clinton*, AMERICAN OVERSIGHT, https://www.americanoversight.org/sessions-letter.

- Please search all locations and systems likely to have responsive records, regardless of format, medium, or physical characteristics.

- Our request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to our request, our request includes all prior messages sent or received in that email chain, as well as any attachments to the email.

- Please search all relevant records or systems containing records regarding agency business. Do not exclude records regarding agency business contained in files, email accounts, or devices in the personal custody of your officials, such as personal email accounts or text messages. Records of official business conducted using unofficial systems or stored outside of official files are subject to the Federal Records Act and FOIA.[20] It is not adequate to rely on policies and procedures that require officials to move such information to official systems within a certain period of time; American Oversight has a right to records contained in those files even if material has not yet been moved to official systems or if officials have, by intent or through negligence, failed to meet their obligations.[21]

- Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically,[22] and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.

- In the event some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the

---

[20] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149–50 (D.C. Cir. 2016); *cf. Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 955–56 (D.C. Cir. 2016).
[21] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, No. 14-cv-765, slip op. at 8 (D.D.C. Dec. 12, 2016).
[22] Presidential Memorandum—Managing Government Records, 76 Fed. Reg. 75,423 (Nov. 28, 2011), https://obamawhitehouse.archives.gov/the-press-office/2011/11/28/presidential-memorandum-managing-government-records; Office of Mgmt. & Budget, Exec. Office of the President, Memorandum for the Heads of Executive Departments & Independent Agencies, "Managing Government Records Directive," M-12-18 (Aug. 24, 2012), https://www.archives.gov/files/records-mgmt/m-12-18.pdf.

requested records. If a request is denied in whole, please state specifically why it is not reasonable to segregate portions of the record for release.

- **Please take appropriate steps to ensure that records responsive to this request are not deleted by the agency before the completion of processing for this request. If records potentially responsive to this request are likely to be located on systems where they are subject to potential deletion, including on a scheduled basis, please take steps to prevent that deletion, including, as appropriate, by instituting a litigation hold on those records.**

## Conclusion

If you have any questions regarding how to construe this request for records or believe that further discussions regarding search and processing would facilitate a more efficient production of records of interest to American Oversight, please do not hesitate to contact American Oversight. American Oversight welcomes an opportunity to discuss its request with you before you undertake your search or incur search or duplication costs. By working together at the outset, American Oversight and your agency can decrease the likelihood of costly and time-consuming litigation in the future.

Where possible, please provide responsive material in an electronic format by email. Alternatively, please provide responsive material in native format or in PDF format on a USB drive. Please send any responsive material being sent by mail to American Oversight, 1030 15th Street NW, Suite B255, Washington, DC 20005. If it will accelerate release of responsive records to American Oversight, please also provide responsive material on a rolling basis.

We share a common mission to promote transparency in government. American Oversight looks forward to working with your agency on this request. If you do not understand any part of this request, please contact Emma Lewis at foia@americanoversight.org or (202) 919-6303. Also, if American Oversight's request for a fee waiver is not granted in full, please contact us immediately upon making such a determination.

Sincerely,

*/s/ Emma Lewis*
Emma Lewis
on behalf of
American Oversight