UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN OVERSIGHT,<br><br>      Plaintiff,<br><br>  v.<br><br>U.S. DEPARTMENT OF GOVERNMENT EFFICIENCY et al.,<br><br>      Defendants. | Civil Action No. 25-0409 (BAH) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
<u>MOTION FOR PRESERVATION ORDER</u>**

Pursuant to the Court's March 25, 2025 Minute Order, Defendant, the U.S. DOGE Service ("USDS") respectfully submits this memorandum in opposition to Plaintiff American Oversight's Motion for a Preservation Order (ECF No. 12).[1]

## INTRODUCTION

This case stems from eight Freedom of Information Act ("FOIA") requests that Plaintiff submitted to the U.S. DOGE Service and the Office of Management and Budget ("OMB"). Am. Compl. ¶¶ 96, 97, 110, 113, 117, 120, 123; Pl. Mot. 1. Plaintiff seeks a preservation order while it litigates whether USDS is subject to FOIA and must produce any responsive documents.

The Court should deny Plaintiff's motion for two reasons. First, regardless of the merits, a preservation order is not warranted here. USDS systematically complies with its Presidential Records Act obligations and regularly instructs its employees to preserve presidential records in all forms, including as recently as two days ago. Moreover, USDS has already issued a litigation hold in light of Plaintiff's complaint. The presumption of Executive Branch officials' good faith requires the Court to deny the motion. Second, on the merits, the records that Plaintiff seeks from USDS are not subject to FOIA, as such USDS properly denied Plaintiff's FOIA requests and Plaintiff is not entitled to a preservation order.

## BACKGROUND

On January 20, 2025, President Trump signed Executive Order 14,158, which directs changes to the previously established United States Digital Service to implement the President's agenda of "improv[ing] the quality and efficiency of government-wide software, network infrastructure, and information technology (IT) systems." 90 Fed. Reg. 8441, § 4. Executive

---

[1] In filing this opposition, Defendant does not concede any affirmative defenses, including that all the records that Plaintiff seeks are government records or that all of the records even exist.

Order 14,158 redesignated the U.S. Digital Service as the U.S. DOGE Service, moved it out of OMB, and made it a free-standing component of the Executive Office of the President with an Administrator who reports directly to the White House Chief of Staff. *Id.* § 3(a). Similarly, it established a "U.S. DOGE Service Temporary Organization" within USDS pursuant to 5 U.S.C. § 3161, which will terminate on July 4, 2026. USDS E.O. § 3(b).

Executive Order 14,158 also requires agency heads to "establish within their respective agencies a USDS Team of at least four employees, which may include Special Government Employees." *Id.* § 3(c). The Executive Order instructs agency DOGE teams, employed by and located within the agencies, to "coordinate their work with USDS and advise their respective Agency Heads on implementing the President's DOGE Agenda." *Id.*

The FOIA requests that are the subject of this lawsuit concern President Trump's January 24, 2025 decision to remove various agency inspectors general from their positions (ECF Nos. 5-9, 5-10), the creation of the "Department of Government Efficiency" ((ECF No. 5-13, 5-15)), Elon Musk's calendar entries (ECF No. 5-17), text messages sent to and from Musk (ECF No. 5-19), individuals employed by USDS (ECF No. 5-21), and Musk's employment records (ECF No. 5-23). Apparently dissatisfied with the existing record retention statutes and before the Government had the opportunity to respond to the Amended Complaint, Plaintiff filed a motion for a preservation order. Pl. Mot (ECF No. 12). Plaintiff's motion seeks a preservation order only against "DOGE," which it uses as "coterminous with 'USDS.'" Pl. Mot. 1 n.1, 15 n.8.

**ARGUMENT**

**I.   USDS Preserves Records Under the Presidential Records Act, and Plaintiff's Speculation that the Records Will Be Destroyed is Unfounded.**

In seeking a preservation order, Plaintiff seeks preliminary injunctive relief and thus must establish irreparable harm. To demonstrate irreparable harm, Plaintiff must show an injury "both

certain and great; it must be actual and not theoretical. 'Injunctive relief will not be granted against something merely feared as liable to occur at some indefinite time.'" *Wis. Gas Co. v. Fed. Energy Reg. Comm'n,* 758 F.2d 669, 674 (D.C. Cir. 1985).

Here, there is no legal or factual basis, under any standard, for the Court to enter an order requiring preservation of all potentially responsive and relevant records. Plaintiff's asserted irreparable harm is an unfounded belief that the records responsive to its request will be destroyed. Pl. Mot. at 20. But demonstrating irreparable harm that would warrant entering a preservation order requires Plaintiff to point to specific evidence that relevant records are at risk of being destroyed during the litigation absent such an order.

For example, in *Competitive Enterprise Institute v. Office of Science and Technology Policy,* Civ. A. No. 14-0765, 2016 WL 10676292, at *3 (D.D.C. Dec. 12, 2016), an agency's director had allegedly used his personal email account to conduct agency-related business. Because the director was a political appointee set to leave office the next month, there was a nonspeculative reason to believe that the emails would soon not be subject to the agency's control. *Id*. Similarly, in *America First Legal Foundation v. Becerra*, Civ. A. No. 24-1092 (RC), 2024 WL 3741402 (D.D.C. Aug. 9, 2024), the plaintiff sued based on allegations that the Centers for Disease Control and Prevention ("CDC") deletes the emails of its former employees after those employees leave the agency, and the National Archives concluded that the CDC's policies and practices were consistent with the Federal Records Act. Because the very subject of the lawsuit was an alleged email-deletion practice that the plaintiff contended violated the Federal Records Act and because the plaintiff had six pending FOIA requests, the court concluded that the plaintiff would likely suffer irreparable harm absent preliminary relief. *Id*. at *15-*16. Plaintiff here has not identified any similar non-speculative reasons to believe the records that it seeks will be destroyed.

At most, Plaintiff claims USDS employees routinely use Signal, which allows users to set their messages to delete automatically. Pl. Mot. at 23. But, as a component of the Executive Office of the President (and as explained below), USDS is subject to the Presidential Records Act. The Presidential Records Act requires that the President "shall take all such steps as may be necessary to assure that the activities, deliberations, decisions, and policies that reflect the performance of the President's constitutional, statutory, or other official or ceremonial duties are adequately documented and that such records are preserved and maintained as Presidential records . . . ." 44 U.S.C. § 2203. USDS employees have been instructed, including as recently as two days ago, to preserve all work-related records and communications regardless of format, including communications exchanged on messaging platforms such as Signal. *See* USDS Records Retention Policy (Mar. 25, 2025) (attached). This instruction includes communications exchanged on digital platforms such as Signal. *Id.* Employees are instructed to "[d]isabl[e] auto-delete features on any such messaging services" to "help with retention and compliance." *Id.* Employees are also advised to use government-issued devices for work-related communications and forward any work-related messages that they receive on personal email or other personal messaging accounts to their government accounts. *Id.* In addition, USDS has circulated a litigation hold letter to its employees advising them to preserve any records potentially relevant to the allegations in the complaint.[2]

Moreover, despite repeatedly expressing concerns about post-Inauguration Day use of Signal, Plaintiffs cite no evidence of continuing Signal use. Instead, they cite the statement, in a recent decision, that "USDS employees acknowledged using Signal . . . during the presidential

---

[2] In exchange for Plaintiff withdrawing its motion, USDS offered to enter into a stipulation that it has a policy of preserving all records consistent with its obligations under the Presidential Records Act, and has directed its employees to preserve all PRA records, including as recently as March 25, 2025 an that it circulated a litigation hold letter to preserve records responsive to Plaintiff's requests. Plaintiff declined this stipulation.

transition period and into the new administration." *Crew III*, 2025 WL 752367, at *16. But that statement was evidently based on media reporting that included no such acknowledgment. *See id.* (citing Scott Patterson, et al., *Inside DOGE's Clash With the Federal Workforce*, Wall St. J. (Feb. 27, 2025)).

Courts "presume that executive officials will act in good faith." *Armstrong v. Executive Office of the President*, 1 F.3d 1274, 1293 (D.C. Cir. 1993); *see Nat'l Archies & Records Admin. v. Favish*, 541 U.S. 157, 174-75 (2003) (collecting cases). "Allegations of government misconduct are easy to allege and hard to disprove, so courts must insist on a meaningful evidentiary showing" to rebut this presumption. *Id.* (citation and quotation marks omitted). Plaintiff's unsubstantiated belief that records responsive to its requests will be destroyed, despite USDS's instructions to preserve documents, lacks any factual basis and contradicts this established presumption. Pl. Mot. at 21 (ECF No. 12). The steps that USDS has taken to preserve its records thus warrant denying the motion for a preservation order. *Judicial Watch, Inc. v. Dep't of Just,* Civ. A. No. 18-0154 (RBW), 2018 U.S. Dist. LEXIS 247710, at *5 (D.D.C. Nov. 13, 2018) (denying motion for preservation order because '"[w]hile personal email accounts were used, no loss or removal of records occurred because emails were copied/forwarded to the appropriate government accounts' and that 'there is no evidence of unauthorized disposal or removal of federal records.'").

Next, Plaintiff casts aspersions regarding USDS's conduct in other government agencies and its alleged refusal to identify its personnel or their positions. *See e.g.*, Pl. Mot at 24. Even assuming the truth of these characterizations—which USDS does not concede—they do not suggest that USDS is violating, or will imminently violate, any preservation-related obligations.[3]

---

[3] At times, Plaintiff casts unwarranted aspersions regarding "who is in charge" at USDS. Pl. Mot at 24-25. Plaintiff's apparent confusion about Acting USDS Administrator Amy Gleason's

- 5 -

In asking the Court to order USDS to preserve records, Plaintiff is simply asking for an order that USDS follow the law. But an injunction must do more than "simpl[y] command that the defendant obey the law." Fed. R. Civ. P. 65(d)(1).

Accordingly, because USDS is complying with its obligations to preserve its records, both in general and in response to this lawsuit, the Court need not and should not take the extraordinary step of presuming that USDS will destroy relevant records and issuing a preservation order.

## II. The Records Plaintiff Seeks from USDS are Not Subject to FOIA or the Federal Records Act.

Independently, the Court likewise should not issue a preservation order because, as a free-standing component within the Executive Office of the President, USDS is subject to the Presidential Records Act, not to FOIA or the Federal Records Act. The Presidential Records Act specifies that where it applies, FOIA does not. See 44 U.S.C. § 2201(2)(B). And the D.C. Circuit treats the scope of the term "agency" for purposes of the Federal Records Act as coterminous with FOIA's definition of the term. *Armstrong*, 1 F.3d at 1293. Thus, the key question is whether USDS is an "agency," or instead an excluded component of the Executive Office of the President.

FOIA defines the term "agency" to include "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f). Although the text references the "Executive Office of the President," it does not include every component in that office, but only components that fall within the specified list items ("department," "corporation," or "other

---

background and role is irrelevant to whether USDS is subject to FOIA, to its record retention practices, and to whether the Court should issue a preservation order.

establishment"). That understanding is consistent with the term being defined, "agency," which does not naturally refer to entities that lack formal structure or independent authority, like the White House Office, the National Security Council, or the Office of Administration. *See, e.g., Bond v. United States*, 572 U.S. 844, 861 (2014) (noting that it is reasonable to consider the ordinary meaning of a defined term in interpreting the scope of a statutorily provided definition).

The D.C. Circuit has set forth "several tests for determining whether an [Executive Office of the President] unit is subject to FOIA." *CREW v. Office of Administration*, 566 F.3d 219, 222 (D.C. Cir. 2009). But, "the test has been stated, common to every case in which [the D.C. Circuit] ha[s] held that an [Executive Office of the President] unit is subject to FOIA has been a finding that the entity in question wielded substantial authority independently of the President." *Id.* (quotation marks omitted).

Consistent with that formulation, the D.C. Circuit has repeatedly refused to hold that Executive Office of the President components that lack substantial independent authority are subject to FOIA. In *Rushforth v. Council on Economic Advisors,* 762 F.2d 1038, 1043 (D.C. Cir. 1985), for example, the D.C. Circuit found that the Council of Economic Advisers is not an agency subject to the FOIA agency even though the Council has duties prescribed by statute (unlike USDS). Each of the Council's enumerated statutory duties is directed at providing advice and assistance to the President, and neither the governing statute nor any executive order gives the Council any regulatory power. *See also National Security Archive v. Archivist of the United States,* 909 F.2d 541, 545 (D.C. Cir. 1990) (the White House Counsel's Office is not a FOIA agency). "[The Council of Economic Advisors] had no similar power to issue formal legally authoritative commands to entities or persons within or without the executive branch." *Meyer v. Bush*, 981 F.2d 1288, 1292 (D.C. Cir. 1993). In contrast, the Council on Environmental Quality is subject to FOIA

because it has independent authority to coordinate federal environmental regulatory programs, issue guidelines for preparing environmental impact statements, and promulgate regulations—legally binding on the agencies—for implementing the procedural provisions of the National Environmental Policy Act. *See Pacific Legal Foundation v. Council on Environmental Quality*, 636 F.2d 1259, 1262-63 (D.C. Cir. 1980).

Like the Council of Economic Advisors, USDS lacks the "substantial independent authority" that would render it an "agency" for purposes of FOIA. USDS has a limited set of advisory responsibilities, none of which even arguably involves the authority to direct agencies or other components of the Executive Branch. Executive Order 14,158 specifies USDS's responsibilities, all of which involve providing advice and making recommendations. None of these limited responsibilities can plausibly be characterized as "authority" wielded by USDS, let alone authority that is independent of the President.

To be sure, in another pending lawsuit in this District, Judge Cooper gave significant weight to language in Executive Order 14,158 stating that USDS was established to "implement the President's DOGE agenda." *CREW v. U.S. DOGE Service*, Civ. A No. 25-511, ECF No. 23 (D.D.C. Mar. 19, 2025), slip op. at 23-24. But that language is not referring to USDS in particular. The Executive Order makes clear that the "DOGE Structure" is to implement the President's DOGE agenda consists of USDS, the USDS temporary organization established within USDS, *and* agency DOGE Teams. Exec. Order 14,158, § 3(a)-(c). It is agency DOGE Teams, working with agency heads, who take actions within agencies for purposes of FOIA.

Even putting that point aside, this language is not evidence that USDS wields substantial authority independent of the President. The word "implement" is simply not instructive on this issue. It appears in a prefatory sentence that explains *why* the President signed the Executive

Order. By itself, this language does not do anything—unlike the rest of the Executive Order, which assigns to USDS specific and purely advisory responsibilities. And it is perfectly consistent with the term "implement" to note that USDS implements the President's agenda by providing specifically delineated recommendations and consultations, collecting specified information, and advising the President. The National Security Council helps implement the President's national security agenda, and the Domestic Policy Council helps implement the President's domestic policy agenda, but that does not convert those presidential advisory bodies into agencies.

Judge Cooper's previous decision also noted that "President Trump's subsequent executive order directs that agencies shall not fill any vacancies for career appointments that the DOGE Team Lead assesses should not be filled, unless the Agency Head determines the positions should be filled." *CREW v. U.S. DOGE Service,* Civ. A No. 25-0511, slip op at *24. But the "DOGE Team Lead" is herself an agency employee who reports to the agency head or an agency head's designee—not to USDS. Exec. Order 14,158, § 2(c). That is dispositive. And in any event, the fact that an agency employee can make an assessment that an agency head can freely countermand is the precise opposite of an "authority" held by USDS—let alone an authority held by USDS that it wields independent of the President.

Last, Judge Cooper's previous decision suggested that USDS exerts substantial influence across federal agencies, discussing media reporting and quotes from President Trump and Elon Musk on various achievements attributed generically to "DOGE." But even if USDS is influential, influence is not the standard for agency status under FOIA. An influence-based rule would be impossible to administer and would contradict precedent about components that are subject only to the Presidential Records Act. Indeed, because the President is the head of the Executive Branch, the most inner-circle of components—such as the White House Chief of Staff—undoubtedly have

the power to influence federal agencies. As the D.C. Circuit has observed, "senior White House officials close to the President[] often give ad hoc directions to executive branch personnel," and when this occurs, "it is assumed" that they are "passing on the President's wishes." *Meyer*, 981 F.2d at 1292-94. Yet the White House Chief of Staff and other influential inner-circle components are unquestionably not subject to FOIA. So too for USDS.

Nor can statements from President Trump or Elon Musk change the picture. No public statements purport to or can confer substantial independent authority to USDS. USDS lacks authority other than that conferred upon it through formal processes, like Executive Order 14,158. And with respect to Musk, to be clear, Musk does not work at USDS, he does not report to the USDS Administrator, and the USDS Administrator does not report to him. Gleason Decl. ¶ 6. (*CREW*, Civ. A. No. 25-0511 (ECF No. 24-2)).

Other factors—to the extent they remain applicable under circuit precedent—confirm that USDS is not an agency for FOIA or Federal Records Act purposes. The D.C. Circuit has at times considered three factors: "(1) 'how close operationally the group is to the President,' (2) 'whether it has a self-contained structure,' and (3) 'the nature of its delegate[d] authority.'" *Armstrong*, 90 F.3d at 558 (quoting *Meyer*, 981 F.2d at 1293).

First, USDS is operationally very close to the President, with its Administrator reporting directly to the White House Chief of Staff. Exec. Order. 14,158, § 3(a). Second, USDS is a non-statutory entity with a relatively small staff, no formal front office, and no organizational chart reflecting its current composition. Gleason Decl. ¶¶13-14. Third, the few responsibilities USDS wields are purely advisory or consultative in nature: for example, consulting with the Assistant to the President for Domestic Policy before the latter develops a federal hiring plan; coordinating with agency DOGE Team Leads; providing "advice and recommendations as appropriate"

concerning implementation of the federal hiring plan; receiving monthly hiring reports from agency DOGE Team leads; receiving monthly reports on agency contracting activities; and the like. See generally, Exec. Order. 14,158. USDS has no power to issue formal, legally authoritative commands to other Executive Branch components. Thus, all three factors support USDS's position that it is not an agency for FOIA or Federal Records Act purposes and is instead governed by the Presidential Records Act.

Accordingly, Plaintiff's motion should be denied for the independent reason that the records sought are not subject to FOIA.

## CONCLUSION

For these reasons, the Court should deny Plaintiff's motion for a preservation order.

Dated: March 26, 2025
       Washington, DC

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

By:     /s/ John J. Bardo
    JOHN J. BARDO, D.C. Bar #1655534
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 870-6770

*Attorneys for the United States of America*