**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICAN OVERSIGHT, | ) |
| *Plaintiff*, | ) |
| v. | ) Case No. 25-cv-409-BAH |
| U.S. DEPARTMENT OF GOVERNMENT EFFICIENCY *et al.*, | ) |
| *Defendants*. | ) |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRESERVATION ORDER**

i

Instead of substantively countering the factors demonstrated by American Oversight that support issuing a preservation order, Defendants' opposition relies on smoke and mirrors to insist that a litigation hold letter, its March 25 records retention policy—which, notably, post-dates American Oversight's motion—and its purported compliance with the Presidential Records Act (PRA) obviate the need for a preservation order. None of these arguments are relevant to the determinative issues: that (1) American Oversight's case raises serious legal questions about whether DOGE is subject to the Freedom of Information Act (FOIA); (2) there is a reasonable, well-founded fear that records responsive to American Oversight's FOIA requests will be lost absent a preservation order and that such a loss would irreparably harm American Oversight; and (3) the balance of equities and public interest strongly favor issuing a preservation order. Indeed, at no point do Defendants even dispute that American Oversight would suffer irreparable harm if records responsive to its FOIA requests are destroyed, nor do they make any showing of how a preservation order would burden the DOGE Defendants.[1] Instead, Defendants appeal to this Court's presumption that the government acts in good faith to paper over the multiple concrete, non-speculative reasons to believe that records responsive to American Oversight's FOIAs may be destroyed.

## ARGUMENT

### I. Preserving Records Pursuant to the Presidential Records Act Does Not Ensure Records Responsive to American Oversight's Requests Have Been and Will Be Preserved.

Defendants argue that American Oversight cannot establish irreparable harm without providing a "non-speculative" reason to believe that records will be destroyed, while completely

---

[1] As it does in its Amended Complaint and Motion, American Oversight refers collectively to Defendants Department of Governmental Efficiency, U.S. DOGE Service and U.S. DOGE Service Temporary Organization as "DOGE Defendants," and to U.S. DOGE Service as "DOGE" or "USDS."

1

ignoring the multiple such reasons American Oversight explained at length in its opening brief. Mem. of Law in Supp. of Pl.'s Mot. for Preservation Order (Pl.'s Br.) at 15-20, ECF No. 12-1 (describing the PRA's narrower scope than FOIA, DOGE's questionable record-keeping practices, and its contumacy in other federal court proceedings). To make this point, the government leans heavily on DOGE's compliance with the PRA. But the DOGE Defendants' purported compliance with the PRA—as opposed to FOIA—is alone a sufficient reason to believe that records may be destroyed. Pl.'s Br. at 16-18. The PRA has a far narrower definition of what is a record that must be preserved than does the Federal Records Act, which in turn has a narrower definition of record than does FOIA. *Id.* at 17. For example, calendar entries are agency records under FOIA, but likely are not presidential records under the PRA. *Id.* Furthermore, the PRA gives the president nearly unlimited discretion over disposal of those records, and that discretion is not subject to judicial review. *Id.* (citing *Armstrong v. Exec. Off. of the President, Off. of Admin.*, 1 F.3d 1274, 1290–91 (D.C. Cir. 1993)).

Moreover, just this week, news broke that senior administration officials, several of whom are subject to the PRA, are using Signal—with auto-delete enabled—to discuss highly sensitive topics. *See* Jeffrey Goldberg, *The Trump Administration Accidentally Texted Me Its War Plans*, The Atlantic, Mar. 24, 2025, https://www.theatlantic.com/politics/archive/2025/03/trump-administration-accidentally-texted-me-its-war-plans/682151/. White House Chief of Staff Susie Wiles is among the individuals included on the referenced Signal chat, evidencing her use of that ephemeral messaging system. *Id*. DOGE Administrator Amy Gleason has represented to the Court that she reports directly to Ms. Wiles, so it is more than mere speculation that Ms. Wiles also uses Signal for to communicate with Ms. Gleason. *See* Decl. of Amy Gleason ¶¶ 5, *Citizens for Resp. & Ethics in Washington v. U.S. Doge Serv.*, No. 25-CV-511 (D.D.C. March 14, 2025), ECF No.

20-2, *available at* https://storage.courtlistener.com/recap/gov.uscourts.dcd.277646/gov.uscourts.dcd.277646.20.2_1.pdf

Thus, even assuming this Administration scrupulously preserves all records subject to the PRA, that does not ensure that all records potentially responsive to American Oversight's FOIA requests have been and will be preserved. Furthermore, there is ample reason to believe that DOGE may not be fully in compliance with the PRA. *See Citizens for Resp. & Ethics in Washington v. U.S. DOGE Serv.*, No. 25-CV-511 (CRC), 2025 WL 752367 ("*CREW III*"),[2] at *16 (D.D.C. Mar. 10, 2025), *reconsideration denied* 2025 WL 863947 (D.D.C. Mar. 19, 2025) (noting Musk "used the social media platform X to solicit job applications for USDS and to poll the public about courses of action that USDS is considering" and that DOGE "staffers are reported to have joined the federal government only recently and, to put it charitably, may not be steeped in its document retention policies").

**II.     The Litigation Hold Does Not Mitigate the Likelihood of Irreparable Harm to American Oversight.**

Courts in this district are clear that assurances of counsel, who are presumed to act in good faith, are insufficient protection against the irreparable harm caused by potential destruction of federal records. Under circumstances boding far less risk of harm than those here, the District Court for the District of Columbia has rejected the government's preservation assurances. For instance, in one case, while noting its presumption "that executive officials will act in good faith," the court held that "absent a court order punishable by contempt requiring the maintenance and preservation" of potentially responsive records, the FOIA requester "would have no recourse"

---

[2] Several of the key cases discussed in this memorandum involve CREW as plaintiff. For purposes of shorthand names, we number them chronologically.

3

were they not maintained and preserved. *Citizens For Resp. and Ethics in Washington v. Off. of Admin.*, 593 F. Supp. 2d 156, 162 (D.D.C. 2009) ("*CREW II*"); *see also Citizens for Resp. & Ethics in Washington v. Off. of Admin.*, 565 F. Supp. 2d 23, 30–31 (D.D.C. 2008) ("*CREW I*") ("[T]he Court finds that a Court Order is appropriate to guard against the grave harm CREW would face if it ultimately prevailed on appeal but could not access the records responsive to its FOIA requests.").

Similarly, here, Defendants' issuance of a litigation hold letter does not save them. Not only is a litigation hold insufficient to supplant a preservation order because American Oversight would "have no recourse" for noncompliance, *see CREW II*, 593 F. Supp. 2d at 162, but Defendants' passing references to a litigation hold in their brief leave myriad questions unanswered. Defendants have not identified, *inter alia*: when the litigation hold was issued and to whom, what materials it instructed recipients to preserve, nor how it instructed recipients to effectuate that preservation. Critically, despite all the evidence to the contrary, including public statements from Trump, Musk, and Musk's own attorneys, Pl.'s Br. at 4-6, Defendants continue to argue that Musk "does not work at [DOGE], he does not report to the USDS Administrator, and the USDS Administrator does not report to him." Defs. Opp. to Pl.'s Mot. for Preservation Order (Defs. Opp.) at 10, ECF No. 13. American Oversight's FOIA requests specifically seek Musk's records related to his work with DOGE. Did Musk receive the litigation hold? When? What records was he instructed to preserve? Even assuming Defendants' counsel sent a litigation hold letter to all DOGE members and officials, including Musk, as early as March 19 (the date counsel first contacted American Oversight's counsel, requesting a thirty-day extension of time to respond to the Complaint, but before Defendant's counsel entered a notice of appearance), that is more than

4

a month after service of the Complaint and more than six weeks after American Oversight sent its FOIA requests. What happened to records before that date?

Instead of answering any of these questions, Defendants' opposition brief summarily dismisses American Oversight's proffered, specific evidence as "speculation" and accusations of bad faith. *See* Defs.' Opp. at 2, 5. American Oversight is not, as Defendants claim, "simply asking for an order that [Defendant] follow the law." *Id.* at 6. We ask for an order requiring the DOGE Defendants to confirm they have retained all records potentially responsive to American Oversight's eight FOIA requests and will continue to do so pending resolution of the merits in this case. *See* Motion, ECF No. 12, and Proposed Order, ECF No. 12-4. Defendants refused to provide those assurances in a consent order, necessitating American Oversight's Motion. See Haddix Decl. at 6, ECF No. 10-1, and Exs. 2 and 3, ECF Nos. 10-3 and 10-4.

### III. Defendants' Argument Regarding "Bad Faith" is a Red Herring.

Instead of addressing American Oversight's clear showing of irreparable harm head on, Defendants ask the Court to overlook the deficiencies in their arguments by suggesting that the Court must find bad faith in order to grant American Oversight any relief. This is a red herring. Multiple courts in this district have found preservation orders warranted in FOIA cases where there was no finding of bad faith—and in fact make explicit statements that the courts presumed good faith on the part of the government. *See*, *e.g.*, *CREW III* at *17 ("[T]he Court need not make a finding of bad faith in order to enter a document preservation order."),

For example, in *CREW I*, the court noted its presumption "that executive officials will act in good faith" and that it "accept[ed] OA's counsels' assurances that the documents responsive to CREW's FOIA requests will be preserved." 565 F. Supp. 2d at 30–31. Nonetheless, the court "agree[d] with [plaintiff] that the assurances of OA's counsel do not have the force of a Court Order, and that violations of such assurances are not punishable by contempt." *Id.* Thus, it found

5

a preservation order warranted because, without it, plaintiff "would have no recourse" if documents were not preserved. *Id.* at 31. Similarly, in *Competitive Enterprise Institute*, the court specifically reasoned that, despite a presumption the records custodians would act in good faith, a preservation order was still warranted to prevent the potential irreparable harm caused by inadvertent loss of records responsive to the underlying FOIA requests, concluding that "[i]n short, it is better to be safe than sorry." *Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y, No.* CV 14-765 (GK), 2016 WL 10676292, at *3 (D.D.C. Dec. 12, 2016). Nor does *Armstrong* help Defendants. There, the D.C. Circuit noted that although it assumes government actors will act in good faith, the risk of losing records improperly categorized as being covered by the Presidential Records Act warrants judicial review of guidelines that purport to implement the PRA. *Armstrong*, 1 F.3d at 1292-93. "This narrow, clearly defined limitation on the scope of the PRA," observed the court, "is absolutely essential to preventing the PRA from becoming a potential presidential *carte blanche* to shield materials from the reach of the FOIA." *Id*. at 1292.

**IV.     DOGE's Records Retention Policy is Woefully Inadequate to Ensure Records are Being Preserved.**

Defendants' issuance of a Records Retention Policy—the day *after* American Oversight filed its Motion—raises more concerns than it answers. The extraordinarily coincidental timing aside, the policy itself falls well short of addressing the need for a preservation order for several reasons. First, it tells us nothing about what retention policy, if any, was in place before March 25. Second, it only references DOGE's obligations under the PRA, which, as discussed *supra* and in greater detail in American Oversight's opening brief, Pl.'s Br. at 16-18, does not ensure that all records responsive to American Oversight's FOIA requests will be preserved. Third, it makes no mention of any obligation to preserve, among other things, calendar entries, which are agency records under FOIA but may not be presidential records under the PRA, and are the specific subject

6

of one of American Oversight's FOIA requests. Am. Compl. ¶ 117, ECF No. 5. And finally, though it advises that "[d]isabling auto-delete features" on messaging services like Signal "will help with retention and compliance," it does not require employees to do so. USDS Records Retention Policy (Mar. 25, 2025), ECF No. 13-2. Notably, just yesterday Chief Judge Boasberg issued a temporary restraining order, ordering administration officials to recover and preserve Signal communications where participants had enabled auto-deletion. *See Am. Oversight v. Hegseth*, No. 25-cv-883, Minute Order (Mar. 27, 2025).

Rather than assuage any fears of irreparable harm here, the Records Retention Policy only provides further evidence that the records American Oversight seeks likely have been or will be destroyed: at worst, it condones, and at best, does not prohibit the use of non-governmental communication systems, including those with auto-delete features. In sum, this policy does nothing to ensure that records responsive to American Oversight's FOIA requests have not been and will not be lost.

### V.     American Oversight Need Not Succeed on the Merits to be Entitled to a Preservation Order.

Defendants spend the bulk of their brief litigating the underlying merits of the claim that DOGE is an agency subject to FOIA. DOGE *is* an agency, and it *is* subject to FOIA, for the reasons explained in American Oversight's opening brief, Pl.'s Br. at 12-15, and for reasons that will be elaborated on when this case proceeds to full briefing on the merits. But American Oversight could *lose* on the merits and still be entitled to a preservation order, because the question of DOGE's agency status is a "question[] going to the merits so serious, substantial, difficult and doubtful, as to make [it] a fair ground for litigation and thus for more deliberative investigation.'" *Competitive Enter. Inst.*, 2016 WL 10676292 at *2 (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977)) (granting in part motion to compel preservation

of records pending determination of whether they were agency records subject to FOIA)); *see also CREW I*, 565 F. Supp. 2d at 28 (quoting *Wash. Metro. Area Transit Comm'n* 559 F.2d at 844 (D.C. Cir. 1977)) (issuing a preservation order even after ruling against plaintiff and holding that OA was not an agency subject to FOIA because"[a]n order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public, and when denial of the order would inflict irreparable injury on the movant"). American Oversight has more than cleared that hurdle.

### VI.    The Balance of Equities and Public Interest Favor a Preservation Order.

It is not necessary to rehash the arguments from American Oversight's opening brief. *See* Pl.'s Br. at 21-22. It suffices to say that Defendants make no showing whatsoever that DOGE would suffer any harm by being ordered to preserve records responsive to American Oversight's FOIA requests. Nor do they attempt any refutation of the argument that a preservation order is in the public interest.

### CONCLUSION

For the foregoing reasons, this Court should exercise its inherent judicial authority, and/or find that American Oversight has met its burden to demonstrate all four factors justifying preliminary injunctive relief, to issue a preliminary preservation order requiring the DOGE Defendants to preserve all records responsive to American Oversight's eight FOIA requests at issue in this matter pending a final determination on the merits and order the DOGE Defendants

to inform the Court whether all records that may be responsive to any of American Oversight's FOIA requests have been preserved to date.

Dated: March 28, 2025                          Respectfully submitted,

*/s/ Elizabeth Haddix*
Elizabeth Haddix
D.C. Bar No. 90019750
David Kronig
D.C. Bar No. 1030649
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 869-5246
david.kronig@americanoversight.org

*Counsel for Plaintiff*