**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

AMERICAN OVERSIGHT,

        Plaintiff,

    v.                                                                          Civil Action No. 25-0409 (BAH)

U.S. DEPARTMENT OF GOVERNMENT
EFFICIENCY, et al.,

        Defendants.

**PLAINTIFF'S MOTION FOR LIMITED DISCOVERY**
**AND INCORPORATED STATEMENT OF POINTS AND AUTHORITIES**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 3

    I.      Factual and Legal Background ........................................................................ 3

    II.     Procedural History ........................................................................................ 6

LEGAL STANDARD .......................................................................................................... 9

ARGUMENT ...................................................................................................................... 9

    I.      Discovery is Appropriate to Determine Agency Status. ........................................ 9

    II.     A Factual Examination of DOGE'S Authority, Structure, and Leadership is
             Necessary to Determine Its Agency Status. ........................................................ 12

              A.      Does DOGE Solely Advise and Assist the President? ............................. 13

              B.      What Authority do DOGE Staff Exercise Within Agencies? ................... 14

              C.      What is DOGE's Structure? .................................................................... 17

              D.      Is DOGE Organizationally and Operationally "Proximate" to the
                    President? ................................................................................................ 18

CONCLUSION .................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### <u>Cases</u>

*Am. Fed'n of Lab. & Cong. v. Dep't of Lab.*,
   No. 25-cv-0339 (D.D.C. filed Feb. 5, 2025) ................................................................ 6, 12, 16

*\*Armstrong v. Exec. Off. of the President*,
   90 F.3d 553 (D.C. Cir. 1996) ...........................................................................................Passim

*Citizens for Resp. & Ethics in Washington v. Off. of Admin.*,
   559 F.Supp.2d 9 (D.D.C. 2008) ................................................................................................ 11

*\*Citizens for Resp. & Ethics in Washington v. Off. of Admin.*,
   566 F.3d 219 (D.C. Cir. 2009) .........................................................................................Passim

*Citizens for Resp. & Ethics in Washington v. U.S. DOGE Serv.*,
   No. 25-cv-511 (D.D.C. filed Feb. 20, 2025)........................................................................ 6, 7, 9

*Eddington v. United States Dep't of Def.*,
   35 F.4th 833 (D.C. Cir. 2022) ....................................................................................................... 9

*Food Lion, Inc. v. United Food and Commercial Workers Int'l Union*,
   103 F.3d 1007 (D.C. Cir. 1997) .................................................................................................... 9

*In re U.S. DOGE Service, et al.*, No. 24A1122 (May 21, 2025) ................................................. 15

*Kissinger v. Reporters Comm. for Freedom of the Press*,
   445 U.S. 136 (1980) ...........................................................................................................9, 10, 18, 19

*League of United Latin Am. Citizens*,
   No. 25-cv-0946 (D.D.C. filed Mar. 31, 2025) ......................................................................... 13

*Lebron v. Nat'l R.R. Passenger Corp.*,
   513 U.S. 374 (1995) ................................................................................................................... 20

*\*Meyer v. Bush*,
   981 F.2d 1288 (D.C. Cir. 1993).............................................................................. 11, 17, 18, 20

*N.L.R.B. v. Robbins Tire & Rubber Co.*,
   437 U.S. 214 (1978) .................................................................................................................3, 10

*New Mexico v. Musk*,
   No. 25-cv-00429 (D.D.C. filed Feb. 13, 2025) ...................................................................... 6, 8

*Pacific Legal Found. v. Council on Env't'l Quality*,
   636 F.2d 1259 (D.C. Cir. 1980) ............................................................................................... 13

*SafeCard Servs., Inc. v. S.E.C.*,
   926 F.2d 1197 (D.C. Cir. 1991) ................................................................................................... 9

*Soucie v. David*,
   448 F.2d. 1067 (D.C. Cir. 1971) ................................................................................................ 10

*Sweetland v. Walters*,
   60 F.3d 852 (D.C. Cir. 1995) ....................................................................................................... 2

*United States ex rel. Westrick v. Second Chance Body Armor, Inc.*,
   2007 WL 9706653 (D.D.C. Aug. 31, 2007) ............................................................................. 8, 9

**Statutes & Other Authorities**

5 U.S.C. § 551 ................................................................................................................ 4

5 U.S.C.§ 551a ............................................................................................................... 12

5 U.S.C. § 552 ................................................................................................................. 1

5 U.S.C. § 552(f)(1) ........................................................................................................ 9

5 U.S.C. §§ 701, *et seq*................................................................................................ 12

31 U.S.C. § 1535 ............................................................................................................ 12

Alien File System of Records, 78 Fed. Reg. 69864-01 (Nov. 21, 2013) ...................... 13

H.R. Conf. Rep. No. 93-1380 ........................................................................................... 9

*Implementing the President's 'Department of Government Efficiency' Cost Efficiency Initiative*,
Exec. Order No. 14,222 Exec., 90 Fed. Reg. 11095 (Feb. 26, 2025). .................... 4, 5

*Establishing and Implementing the President's "Department of Government Efficiency,"*
90 Fed. Reg. 8441 (Jan. 20, 2025)............................................................... 3, 4, 7

*Implementing the President's "Department of Government Efficiency" Workforce Optimization
Initiative*, Exec. Order No. 14,210, 90 Fed. Reg. 9669 (Feb. 11, 2025)..................... 4

**Other Materials**

Bobby Allyn et al., *Musk's Team Takes Control of Key Systems at Consumer Financial Protection
Bureau*, NPR (Feb 7, 2025, 11:48 PM), https://www.npr.org/2025/02/07/g-s1-47322/musks-
team-takes-control-of-key-systems-at-consumer-financial-protection-bureau. ...................... 14

Christopher Bing et al., *Who's Running the Doge Wrecking Machine: The World's Richest Man
or a Little-Know Bureaucrat?*, ProPublica (Mar. 14, 2025, 1:30 PM), https://www.propublica.
org/article/doge-leadership-elon-musk-amy-gleason-trump-ethics-conflict-of-interest. ........... 6

Cuneyt Dil, *Elon Musk's DOGE staffers Sleep in IKEA beds in Federal Offices*, Axios D.C.
(Mar.10, 2025), https://www.axios.com/local/washington-dc/2025/03/10/elon-musk-doge-
sleep-ikea-beds-federal-buildings. ......................................................................................... 14

David DiMolfetta, *DOGE Employee Edward Coristine Lands at CISA with DHS Email*, NextGov
(Feb. 19, 2025), https://www.nextgov.com/cybersecurity/2025/02/doge-employee-edward-
coristine-lands-cisa-dhs-email/403126/. ................................................................................. 17

Andrew Duehren et al., *Elon Musk's Team Now Has Access to Treasury's Payments System*, N.Y. Times (Feb. 1, 2025), https://www.nytimes.com/2025/02/01/us/politics/elon-musk-doge-federal-payments-system.html. ................................................................. 14

Kit Eaton, *DOGE Cuts Force the FDA to Recruit Volunteers to Finish Drug Reviews*, Inc. (Apr. 29, 2025), https://www.inc.com/kit-eaton/doge-fired-drug-testing-experts-the-fda-needs-volunteers-to-finish-their-work/91182110................................................................. 15

Final FOIA Response Letter from U.S. Dep't of the Interior to American Oversight (Apr. 3, 2025), *available at* https://www.documentcloud.org/documents/25952464-response-to-american-oversight-foia-request-to-department-of-the-interior-multi-doi-25-0654-nrr/. ......... 15

Final FOIA Response Letter from Ctrs. for Disease Control & Prevention to American Oversight (Mar. 25, 2025), *available at* https://www.documentcloud.org/documents/25952465-response-to-american-oversight-foia-request-to-the-cdc-multi-hhs-cdc-25-0663-nrr/............................ 15

Final FOIA Response Email from Food & Drug Admin. to American Oversight (Mar. 19, 2025), *available at* https://www.documentcloud.org/documents/25952467-response-to-american-oversight-foia-request-to-the-fda-multi-hhs-fda-25-0667-nrr/. ................................................. 15

Final FOIA Response Letter from U.S. Dep't of Agric. to American Oversight, April 10, 2025, *available at* https://www.documentcloud.org/documents/25952466-response-to-american-oversight-foia-request-to-the-department-of-agriculture-multi-usda-25-0652-a/. .................... 16

Makena Kelly & Zoë Schiffer, *Elon Musk's Friends Have Infiltrated Another Government Agency*, WIRED (Jan. 31, 2025, 6:27 PM), https://www.wired.com/story/elon-musk-lackeys-general-services-administration/................................................................. 16

Ryan Mac et al., *Meet Elon Musk's Top Lieutenant Who Oversees DOGE*, N.Y. Times, Mar. 21, 2025, https://www.nytimes.com/2025/03/20/technology/elon-musk-steve-davis-doge.html. .... 6

Jenna McLaughlin et al., *How Cuts and $1 Payment Limits Are Making Federal Jobs Harder*, NPR (Mar. 20, 2025, 5:00 AM), https://www.npr.org/2025/03/20/nx-s1-5333655/interior-department-budget-cuts-doge. ................................................................. 15

Ella Nilsen & Sean Lyngaas, *Trump Energy Secretary Allowed 23-Year-Old DOGE Rep to Access IT Systems Over Objections from General Counsel*, CNN (updated Feb. 7, 2025, 2:54 PM), https://www.cnn.com/2025/02/06/climate/doge-energy-department-trump/index.html. 17

Yuki Noguchi, *DOGE Cut a CDC Team As It Was About to Start a Project to Help N.C. Flood Victims*, NPR (Apr. 15, 2025, 9:00 AM), https://www.npr.org/ sections/shots-health-news/2025/04/15/nx-s1-5364897/cdc-disaster-doge-trump-layoffs-hurricane-helene.............. 15

Shalini Ramachandran & Josh Dawsey, *Elon Musk's Chief Lieutenant at DOGE Leaves Agency*, Wall St. J., May 29, 2025, https://www.wsj.com/us-news/steve-davis-leaves-doge-411a2d1b. ......................................... 6

Lisa Rein et al., *DOGE is Driving Social Security Cuts and Will Make Mistakes, Acting Head Says Privately*, Wash. Post (Mar. 6, 2025), https://www.washingtonpost.com/politics/2025/03/06/doge-is-driving-social-security-cuts-will-make-mistakes-acting-head-says-privately/. ................................................................................................................................ 14

Raphael Satter, *Exclusive: DOGE Staffer, 'Big Balls', Provided Tech Support to Cybercrime Ring, Records Show*, USA Today (Mar. 26, 2025 7:11 AM), https://www.usatoday.com/story/news/politics/2025/03/26/doge-staffer-big-balls-edward-coristine/82667607007/. 17

Zoë Schiffer & Kate Knibbs, *'Who Is DOGE?' Has Become a Metaphysical Question*, WIRED (Apr. 24, 2025 1:27 PM), https://www.wired.com/story/elon-musk-doge-mystery-general-services-administration/. ................................................................................................................ 16

*The People Carrying Out Musk's Plans at DOGE*, N.Y. Times (updated May 28, 2025), https://www.nytimes.com/interactive/2025/02/27/us/politics/doge-staff-list.html. ........... 16, 17

**PLAINTIFF'S MOTION FOR LIMITED DISCOVERY
AND INCORPORATED STATEMENT OF POINTS AND AUTHORITIES**

Pursuant to Federal Rules of Procedure 26, 30, 33, 34, and 36, and the Court's May 23, 2025 Minute Order, Plaintiff American Oversight respectfully moves for limited discovery from Defendants U.S. Department of Government Efficiency, U.S. DOGE Service ("USDS"), and U.S. DOGE Service Temporary Organization ("USDSTO") (collectively, "DOGE") to determine whether DOGE wields independent authority sufficient to qualify as an "agency" under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").[1] Attached to this Motion as Exhibit 1 are properly scoped Interrogatories, Requests for Documents, and Requests for Admissions. American Oversight asks that the Court order (1) the DOGE Defendants to respond to the discovery requests within twenty (20) days; (2) the parties to submit a joint status report within ten (10) days of American Oversight's receipt of DOGE's discovery responses as to whether depositions are necessary; and to (3) allow Plaintiff to take depositions of DOGE (pursuant to Rule 30(b)(6)) and Amy Gleason, if needed, based on DOGE's responses to the attached requests.

Pursuant to Local Rule 7(m), Counsel for American Oversight conferred with Defendants' counsel. Defendants oppose the relief requested in this motion.

## INTRODUCTION

This case involves a conflict between DOGE's purported structure, authority, and operations and—by all public accounts—its actual reality. The government claims that DOGE merely advises the President and exercises no substantial independent authority, and that the various staffers it has inserted into agencies across the federal government are just those agencies'

---

[1] Since Defendant U.S. Office of Management and Budget does not contest its agency status, American Oversight is not seeking discovery from it.

employees, reporting to official agency leadership. But publicly available facts suggest this is a ruse designed to evade legal requirements, including FOIA.

Disregarding decades of precedent, DOGE claims to be immune from discovery needed to determine the threshold question of whether it is subject to FOIA. But while discovery is unusual in standard FOIA cases, it is necessary and appropriate where the parties dispute whether an entity within the Executive Office of the President ("EOP") is an agency subject to FOIA. In such cases, this circuit's precedent is clear that determining agency status requires not only examination of the entity's *de jure* power and responsibilities, but also a *de facto* inquiry into what it actually does. *See*, *e.g.*, *Citizens for Resp. & Ethics in Washington ("CREW") v. Off. of Admin.* (*"OA"*), 566 F.3d 219, 222 (D.C. Cir. 2009) ("*CREW I*") (quoting *Sweetland v. Walters*, 60 F.3d 852, 854 (D.C. Cir. 1995)) ("common to every case in which we have held that an EOP unit is subject to FOIA has been a finding that the entity in question 'wielded substantial authority independently of the President'"); *Armstrong v. Exec. Off. of the President*, 90 F.3d 553, 560 (D.C. Cir. 1996) (holding the necessary inquiry is whether the entity "could exercise substantial independent authority" and whether it "did in fact exercise such authority").

Here, discovery is necessary because of the government's own conduct. The government has taken publicly inconsistent positions on basic questions (e.g., who actually runs DOGE); has installed within agencies various personnel who nominally report to agency leadership but, by all public accounts, *actually* report to DOGE; and has repeatedly taken litigation positions in other cases that are contradicted by evidence in the public record. In this case, DOGE's conduct belies its claims that its agency status is a question of pure law that can be decided on the face of the executive orders that created it. Instead of filing a Rule 12 motion to dismiss on this basis, the government filed an Answer replete with vague non-denials of American Oversight's factual

allegations regarding DOGE's agency status. Then, defying this Court's Standing Order (and despite claiming that DOGE's agency status "is a question of statutory interpretation that can be resolved without discovery," ECF No. 20, ¶ 7), in the parties' initial joint status report, it refused to propose *any* briefing schedule for dispositive motions.

These tactics—to obfuscate the facts, drag out the schedule, and postpone consideration of this threshold question—only delay and obstruct American Oversight's access to records that are urgently needed to inform the public about DOGE's sweeping, unprecedented efforts to remake the entire executive branch of the federal government. Indeed, Defendants' tactics obstruct FOIA's purpose "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *N.L.R.B. v. Robbins Tire & Rubber Co*., 437 U.S. 214, 242 (1978).

Rather than countenance these maneuvers, the Court should permit prompt, limited discovery regarding DOGE's agency status so this otherwise routine FOIA case can proceed. American Oversight respectfully requests that this Court grant Plaintiff's motion and order (1) the DOGE Defendants to respond to the attached discovery requests within twenty (20) days; (2) the parties to submit a joint status report within ten (10) days of American Oversight's receipt of DOGE's discovery responses as to whether depositions are necessary; and to (3) allow Plaintiff to take limited depositions if needed, based on DOGE's responses to the attached requests.

## BACKGROUND

## I.    Factual and Legal Background

On January 20, 2025, Trump issued an executive order "establish[ing] the Department of Government Efficiency to implement the President's DOGE Agenda, by modernizing Federal technology and software to maximize governmental efficiency and productivity." *Establishing and Implementing the President's "Department of Government Efficiency,"* 90 Fed. Reg. 8441 (Jan.

20, 2025) ("First DOGE EO"). Per the order, "'Agency' has the meaning given to it in section 551 of title 5, United States Code, except that such term does not include the Executive Office of the President or any components thereof." *Id.* It describes "DOGE structure" —without mentioning the Department of Government Efficiency—as consisting of the U.S. DOGE Service (formerly the U.S. Digital Service) and the USDTO, "a temporary organization" within USDS "headed by the USDS Administrator and . . . dedicated to advancing the President's 18-month DOGE agenda." *Id.* The order requires "each Agency Head," in "consultation with USDS," to "establish within their respective Agencies a DOGE Team of at least four employees, which may include Special Government Employees," selected "in consultation with the USDS Administrator." *Id.*

Trump issued a second DOGE executive order on February 11, 2025, showing that DOGE will do much more than simply "moderniz[e] Federal technology and software." *Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative*, Exec. Order No. 14,210 at § 3, 90 Fed. Reg. 9669 (Feb. 11, 2025). The second DOGE EO directs each Agency Head to develop "a data-driven plan, in consultation with its DOGE Team Lead, to ensure new career appointment hires are in highest-need areas," and requires that new career appointment hiring decisions "be made in consultation with the agency's DOGE Team Lead." *Id.*

Trump's third DOGE-related executive order, issued February 26, 2025, requires each Agency Head to work with DOGE Team Leads to: "build a centralized technological system" with the capability to "pause and rapidly review any payment for which the approving employee has not submitted a brief, written justification"; review existing contracts and terminate or modify them "to promote efficiency and advance the policies of [the] Administration"; provide monthly reports to the USDS Administrator justifying "non-essential travel" expenditures; and freeze all credit cards held by agency employees for 30 days. *Implementing the President's 'Department of*

4

*Government Efficiency' Cost Efficiency Initiative*, Exec. Order No. 14,222, 90 Fed. Reg. 11095 (Feb. 26, 2025). It also requires each DOGE Team Lead to report monthly to the USDS Administrator on "contracting activities," including "all payment justifications." *Id.*

DOGE began work immediately. Within a few weeks, it: deployed its own staff across multiple agencies to direct and coordinate their operations, Am. Compl. ¶72, ECF No. 5; shut down the U.S. Agency for International Development ("USAID") and the Consumer Financial Protection Bureau ("CFPB"), *id.* ¶¶ 57-64, 69-70; halted payments on preexisting federal contracts despite orders to the contrary from Senate-confirmed Cabinet secretaries, *id.* ¶¶ 60-61; emailed more than two million federal employees with instructions to reply with an email documenting their accomplishments for the previous week, threatening termination for nonresponses, *id.* ¶¶ 38-39; gained access to multiple agencies' most sensitive computer systems that contain private health and financial information about American taxpayers, as well as classified information, *id.* ¶¶ 59, 65-69, 76; and a great deal more—apparently without the involvement, approval, or even knowledge of the President or senior White House officials. *See id.* ¶¶ 37-38.

From DOGE's inception, Trump and others have repeatedly identified Elon Musk as DOGE's leader, Am. Compl. ¶16, 45, 47, 52-55; and Musk has publicly claimed credit for the above-described actions across the government. *See, e.g.*, *id.* ¶¶ 46 (Musk emails federal employees requiring them to respond or face termination); ¶ 52 (when asked to identify the USDS Administrator, White House Press Secretary states "the President tasked Elon Musk to oversee the DOGE effort"); ¶ 63 (Musk posts on social media that he had "spent the weekend feeding USAID into the wood chipper"). However, in other litigation in this district, the government has stated that DOGE is "separate from the White House," and that Musk "is an employee in the White House"

and not an employee of DOGE.[2] But three days later, Trump told an audience of investors and company executives in Miami, "I signed an order creating the Department of Government Efficiency and put a man named Elon Musk in charge." Am. Compl. ¶ 47. In another case, the government submitted a March 14, 2025 declaration by Amy Gleason stating she is the Acting USDS Administrator, reports to the White House Chief of Staff, and neither reports to Musk nor he to her.[3] But in other litigation, an earlier affidavit shows Ms. Gleason was appointed "HR Specialist" at the U.S. Department of Health and Human Services (HHS) on March 4, 2025.[4] Finally, more recent reporting indicates that Musk lieutenant Steve Davis—not Gleason—may have run day-to-day DOGE operations.[5]

## II.    Procedural History

On January 30, 2025, American Oversight submitted two urgent FOIA requests, seeking expedited processing, for records regarding President Trump's January 24, 2025 removal of inspectors general from at least seventeen (17) federal agencies. Am. Compl. ¶¶ 94-108 & Exs. A-B. On February 3, 2025, American Oversight sent six more FOIA requests to DOGE: two seeking records of the former U.S. Digital Service from before Trump's inauguration, concerning communications between that agency and the then-nascent, nongovernmental DOGE, *see* Am.

---

[2] *See* Declaration of Joshua Fischer, *New Mexico et al, v. Elon Musk et al.,* No. 25-cv-00429, ECF No. 24-1 (D.D.C. Feb. 17, 2025), attached as Ex. 2.

[3] *See* Declaration of Amy Gleason, *CREW v. U.S. DOGE Serv.*, No. 25-CV-511 ("*CREW II*"), ECF 20-2 (D.D.C. March 11, 2025), attached as Ex. 3.

[4] Appointment Affidavit (OPM Form SF-61) of Amy Gleason, *AFL-CIO v. Dep't of Lab.*, No. 25-cv-0339, ECF No. 65-1 (D.D.C March 18, 2025), attached as Ex. 4.

[5] Ryan Mac et al., *Meet Elon Musk's Top Lieutenant Who Oversees DOGE*, N.Y. Times, Mar. 21, 2025,    https://www.nytimes.com/2025/03/20/technology/elon-musk-steve-davis-doge.html; Christopher Bing et al., *Who's Running the Doge Wrecking Machine: The World's Richest Man or a Little-Know Bureaucrat?*, ProPublica (Mar. 14, 2025, 1:30 PM), https://www.propublica. org/article/doge-leadership-elon-musk-amy-gleason-trump-ethics-conflict-of-interest.

Reportedly, Davis left this role on or about May 29, 2025. *See* Shalini Ramachandran & Josh Dawsey, *Elon Musk's Chief Lieutenant at DOGE Leaves Agency*, Wall St. J., May 29, 2025, https://www.wsj.com/us-news/steve-davis-leaves-doge-411a2d1b.

Compl. ¶¶ 109-115 & Exs. E, G; and four seeking, *inter alia*, records concerning DOGE's communications with external entities, its staffing, Musk's employment, and Musk's calendars. *See* Am. Compl. ¶¶ 116-128 & Exs. I, K, M, O. When Defendants did not respond, American Oversight initiated this action on February 11, 2025, ECF No. 1, and filed an Amended Complaint on March 5, 2025, ECF No. 5. Anticipating the government would dispute DOGE's "agency" status, the Amended Complaint included concrete, specific factual allegations about DOGE's structure, authority, and operations. *See, e.g.*, Am. Compl. ¶¶ 31- 40, 56-72, 78, 91-92.

On March 10, 2025, another court in this district found that DOGE is likely an agency subject to FOIA and ordered DOGE to preserve and release records sought by that requester. *See CREW v. U.S. DOGE Serv.*, No. 25-CV-511, 2025 WL 752367 at *10. (D.D.C. Mar. 10, 2025). Two days later, DOGE emailed American Oversight regarding the eight FOIA requests at issue in this case, stating:

> As set forth in Executive Order 14158, Establishing and Implementing the President's 'Department of Government Efficiency,' USDS sits within the Executive Office of the President, and the USDS Administrator reports to the President's Chief of Staff. We write now to inform you that USDS is subject to the Presidential Records Act, 44 U.S.C.S. § 2201 et seq., and is not subject to FOIA. We therefore decline your request.

*See* Declaration of Elizabeth Haddix ("Haddix Decl."), ECF No. 10-1, and Ex. 1, ECF No. 10-2. On March 24, 2025, American Oversight asked the Court to order DOGE to preserve all records potentially responsive to its eight FOIA requests, and to confirm whether all responsive records had been preserved to date. ECF No. 12. The Court so ordered on April 2, 2025. ECF 15.

Defendants filed an Answer on April 21, 2025, ECF No. 18, which they amended on April 24, 2025, ECF No. 19, that provided the following boilerplate, confounding response to every factual allegation supporting an inference that DOGE is an agency subject to FOIA:

> To the extent the allegations seek to provide background facts in support of allegations of public interest, Defendants admit there may be some public interest in the records sought but presently lack knowledge or information sufficient to form a belief as to the existence or extent of any public interest, including as compared to any countervailing interests. To the extent the allegations in this paragraph are alleged for other purposes, they do not set forth claims of relief or aver facts in support of a claim, and thus, the Court should strike them as immaterial and impertinent matters pursuant to Rule 12(f).

*See generally* Am. Answer, ECF No. 19. Defendants asserted that response to all of American Oversight's concrete factual allegations about DOGE's structure, authority, and operations that were and are wholly within the government's knowledge. *Compare* Am. Compl. ¶¶ 29, 31-40 *with* Am. Answer ¶¶ 29, 31-40.

The parties then submitted a joint status report pursuant to this Court's Standing Order, ECF No. 20, which included their dispute concerning American Oversight's request for discovery. Although American Oversight proposed a briefing schedule for dispositive motions as required by the Standing Order, Defendants would not agree to nor propose an alternative schedule, ostensibly "[b]ecause OMB has documents that it has not produced, [and so] entering a briefing schedule at this stage in the proceedings would be premature and would likely require at least two rounds of summary judgment briefing." ECF No. 20 at 2.

On May 23, 2025, the Court issued a scheduling order for briefing to address "whether plaintiff should be permitted limited discovery to determine whether [DOGE] wield[s] independent authority sufficient to be subject to" FOIA. Minute Order, May 23, 2025[6]. The order

---

[6] The Court's Minute Order calls for a "motion for expedited discovery," but the discovery sought is not "expedited." Defendants have answered the Complaint, and the parties have conferred pursuant to the Court's Standing Order. *Compare New Mexico v. Musk*, No. 25-CV-429 (TSC), 2025 WL 783192, at *2 (D.D.C. Mar. 12, 2025) (addressing "expedited" discovery for preliminary injunction motion) *with United States ex rel. Westrick v. Second Chance Body Armor, Inc*., No. CV 04-0280 (RWR/AK), 2007 WL 9706653, at *2 (D.D.C. Aug. 31, 2007) (affirming discovery proper after answer and Rule 26(f) conference and rejecting argument that discovery should be

required Plaintiff to file a set of "proposed '*properly scoped*' [discovery] requests." *Id.* (quoting

*CREW v. U.S. DOGE Serv.*, 2025 WL 1392836, at *4 (D.D.C. Apr. 15, 2025)).

## LEGAL STANDARD

A district court has broad discretion to "permit or deny discovery," *Food Lion, Inc. v. United Food and Commercial Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997), and to "manage the scope of discovery," and its decisions regarding discovery will be overturned "only in unusual circumstances." *Eddington v. United States Dep't of Def.*, 35 F.4th 833, 841 (D.C. Cir. 2022) (quoting *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). While discovery in routine FOIA cases is unusual, the D.C. Circuit has consistently affirmed discovery orders to address the threshold question of an EOP entity's agency status. *See Armstrong,* 90 F.3d at 558–59 (finding deposition testimony and other evidence in the record determined whether entity exercised independent authority); *CREW I,* 566 F.3d at 225-26 (affirming order allowing discovery, including depositions, regarding whether OA is subject to FOIA).

## ARGUMENT

### I.    Discovery is Appropriate to Determine Agency Status.

The D.C. Circuit applies a functional test to determine whether an entity within the EOP is an "agency" under FOIA. FOIA defines "agency" to "include[] any executive department . . . or other establishment in the executive branch of the Government (including the Executive Office of the President) . . . ." 5 U.S.C. 552(f)(1). Within the EOP, only "the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President" fall outside FOIA's scope. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 156 (1980) (quoting H.R. Conf. Rep. No. 93-1380, at 15 (1974)).

---

stayed pending dispositive motion). Therefore, the more exigent "expedited" standard that applies when a preliminary injunction motion is pending is not applicable here.

The D.C. Circuit's functional test to determine whether an EOP entity is an "agency" turns on facts: does the entity exercise "substantial independent authority" or does it instead exist solely "to advise and assist the President"? *Soucie v. David*, 448 F.2d. 1067, 1073 (D.C. Cir. 1971); *see also Armstrong*, 90 F.3d at 560 (holding necessary inquiry is whether entity "could exercise substantial independent authority" and whether it "does in fact exercise such authority"); *CREW I*, 566 F.3d at 224 (concluding after considering evidence obtained through discovery that OA "lacks substantial independent authority").This fact-sensitive inquiry supports FOIA's fundamental purpose of government transparency to ensure an informed citizenry and accountability of the governors to the governed, *N.L.R.B.*, 437 U.S. at 242, without undue intrusion into the President's inner circle. Under this careful balance, the purely internal operations of the White House—records of "the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President," *Kissinger*, 445 U.S. at 156—are not subject to disclosure. But that is the question: does a particular EOP unit have the "sole function . . . to advise and assist the President," or does it exercise power in its own right? Under D.C. Circuit precedent, this inquiry is not, as Defendants suggest, confined to the entity's charter or statutory authority, but instead necessitates considering "specific evidence" that "varies with the entity in question." *Armstrong*, 90 F.3d at 558–59.

So, for example, in *Armstong*, the D.C. Circuit considered the National Security Council's actual operations, including how closely it worked with the President and whether "the record suggest[ed] that the President has empowered the NSC staff to direct [another agency head] in any way." *Id*. at 560-61. It also considered a staffer's deposition testimony about his "ability to issue instructions or directions to agencies." *Id* at 561. In *CREW I*, the D.C. Circuit noted that the district court had properly allowed discovery consisting of "more than 1300 pages of records that shed

light on the OA's authority and operations, an understanding of which is critical for determining whether the OA is subject to FOIA," 566 F.3d at 225; a deposition of its director, which included questions about the OA's "interactions with federal agencies, and the duties [it] performs," *id*. at 226; and "a sworn declaration by its general counsel," *id*. at 225-26. Based on that evidence, the district court concluded that the OA was not subject to FOIA, finding it "lacks the type of substantial independent authority [the D.C. Circuit] has found indicative of agency status for other EOP components." *Id*. at 221 (quoting *CREW v. Off. of Admin.*, 559 F.Supp.2d 9, 21 (D.D.C. 2008)). The D.C. Circuit affirmed the lower court's dismissal of the case, holding the OA "lacks substantial independent authority and is therefore not an agency under FOIA," because "nothing in the record indicate[d] that OA performs or is authorized to perform tasks other than operational and administrative support for the President and his staff." *Id*. at 224. Likewise, in *Meyer v. Bush*, in addition to finding the entity's "lack of a separate staff indicates the absence of independent authority," 981 F.2d 1288, 1296 (D.C. Cir. 1993), the D.C. Circuit looked beyond the executive order establishing the entity to also analyze its real-world actions, determining there was "no indication that [it] . . . directed anyone, including OMB, to do anything." *Id*. at 1294.

These cases embrace the functional, pragmatic approach to determining the authority wielded by EOP entities required by precedent. The constrained, formalistic approach the government urges contradicts D.C. Circuit precedent and would permit the President to shield a powerful entity from FOIA with an anodyne executive order. *Cf. id.* at 1296 (rejecting formalistic argument based on nature of instrument creating entity because, if adopted, "a future President could avoid creating an agency under FOIA by informally delegating authority to an 'establishment' in the Executive Office.").

11

II.    **A Factual Examination of DOGE'S Authority, Structure, and Leadership is Necessary to Determine Its Agency Status.**

Defendants' claim that "the question of whether DOGE is subject to FOIA is a question of statutory interpretation that can be resolved without discovery," JSR ¶ 7, ECF No. 20, is belied by both the D.C. Circuit precedent outlined above as well as public reporting on DOGE's structure, authority and operational proximity to the President, *see supra* at 4-6—an "understanding [of which] is critical for determining whether [it] is subject to FOIA," 566 F.3d at 225. Discovery is thus necessary to elicit admissible evidence for the Court to consider and resolve the issue. *See, id.* at 225–26.

Contradictions between the DOGE executive orders, litigation assertions by DOGE officials and public statements by both Trump and Musk further necessitate discovery here. Trump repeatedly told the public that Musk heads DOGE, Musk publicly bragged about the power he (as DOGE's leader) exerted over various federal agencies, and public reporting confirms that Musk and DOGE have acted independently—sometimes without White House knowledge or approval—and far beyond a mere advisory capacity. *See supra* at 5-6. And all of that conflicts with what the DOGE executive orders and Ms. Gleason's affidavits say.

That determining whether an EOP entity is an "agency" for purposes of FOIA requires a functional, fact-driven inquiry is also underscored by the government's assertion in other litigation that DOGE is an "agency" under the Economy Act, 31 U.S.C. § 1535, but not under FOIA, the Privacy Act, 5 U.S.C.§ 551a, or the APA, 5 U.S.C. §§ 701 *et seq*. *See Am. Fed'n of Lab. & Cong. of Indus. Organizations ("AFL-CIO") v. Dep't of Lab.*, 766 F. Supp. 3d 105, 112 (D.D.C. 2025) ("[DOGE] becomes, on defendants' view, a Goldilocks entity: not an agency when it is burdensome but an agency when it is convenient."). Similarly, in a challenge brought against Trump's executive order purporting to require proof of citizenship for voting, the government

defended against a Privacy Act claim by arguing that DOGE is an "agency" for purposes of receiving data from the U.S. Customs and Immigration Service pursuant to its Alien File System of Records Notice, 78 Fed. Reg. 69864-01, 69869 (Nov. 21, 2013).[7]

In sum, limited discovery is essential to ascertain actual facts relevant to the real-world, functional test on the question of agency status. Discovery on the following key questions will enable this Court to decide this threshold jurisdictional question. Notably, how DOGE has operated may have changed over the past several months, *see supra* at 6 n. 5, partly in response to litigation, and thus these questions must be answered both as to how DOGE operates now and how it has operated over the preceding four months.

### A.    Does DOGE Solely Advise and Assist the President?

Whether DOGE exerts authority at other executive agencies or merely advises and assists the President is central to determining its agency status. *See, e.g.*, *Armstrong*, 90 F.3d at 559 (discussing earlier holding that the "Council on Environmental Quality is an agency because of its independent authority to 'issue guidelines to federal agencies,' 'coordinate federal programs,' and oversee certain activities of other federal agencies" (quoting *Pacific Legal Found. v. Council on Envt'l Quality*, 636 F.2d 1259, 1262–63 (D.C. Cir. 1980)). In other litigation, the government claims that, on paper, DOGE lacks the authority to direct federal agencies. But public reporting and statements by Trump and Musk indicate that DOGE has directed agency actions and overruled at least one Senate-confirmed Cabinet secretary:

---

[7] *See* Defs.' Opp. to Democratic Party Pls.' Mot. for Prelim. Inj. at 28 – 29, *League of United Latin Am. Citizens ("LULAC") v. Exec. Office of the President*, No. 25-cv-0946 (D.D.C. Apr. 14, 2025), ECF No. 84; *see also* Tr. of Prelim. Inj. Hearing at 78:18 – 25, *LULAC*, No. 25-cv-0946 (D.D.C. Apr. 17, 2025) ("The Court: . . . I'm just asking whether DOGE is or is not a government agency for purposes of this routine use." "Mr. Gates: For purposes of the routine use, I maintain that it is.") (attached hereto as Exhibit 5).

- DOGE staff halted USAID payments for "life-saving humanitarian assistance programs" specifically authorized by the Secretary of State. Am. Compl. ¶¶ 61 – 62, ECF No. 5.

- The Acting Social Security Administration Commissioner admitted that he is "receiving decisions that are made without my input" from DOGE that he "ha[s] to effectuate."[8]

- DOGE staff have gained access to sensitive data systems at multiple agencies—often over the objections of career staff.[9]

Accordingly, American Oversight is entitled to discovery to understand: (1) DOGE staff's role within federal agencies, (2) DOGE's role in cancelling federal agency contracts, grants, leases, or similar instruments, and (3) DOGE's role in personnel actions taken against federal agency employees or contractors.

### B. What Authority do DOGE Staff Exercise Within Agencies?

Whether the individuals who have actually effectuated DOGE mandated cuts and policies within each agency are DOGE personnel—as public reporting would suggest—is relevant to the question of whether DOGE "wield[s] substantial authority independently of the President" or whether it merely "advise[s] and assist[s] the President." *See CREW*, 566 F.3d at 222 (internal quotations omitted). Supposedly, the DOGE Teams—who work and reportedly sleep in agency offices,[10] displaying little if any operational proximity to the President—responsible for

---

[8]Lisa Rein et al., *DOGE is Driving Social Security Cuts and Will Make Mistakes, Acting Head Says Privately*, Wash. Post (Mar. 6, 2025), https://www.washingtonpost.com/politics/2025/03/06/doge-is-driving-social-security-cuts-will-make-mistakes-acting-head-says-privately/.

[9] *See, e.g.*, Andrew Duehren et al., *Elon Musk's Team Now Has Access to Treasury's Payments System*, N.Y. Times (Feb. 1, 2025), https://www.nytimes.com/2025/02/01/us/politics/elon-musk-doge-federal-payments-system.html; Tim Marchman & Matt Giles, *This DOGE Engineer Has Access to the National Oceanic and Atmospheric Administration*, WIRED (Feb. 5, 2025, 2:58 PM), https://www.wired.com/story/doge-engineer-noaa-data-google-musk-climate-project-2025/; Bobby Allyn et al., *Musk's Team Takes Control of Key Systems at Consumer Financial Protection Bureau*, NPR (Feb 7, 2025, 11:48 PM), https://www.npr.org/2025/02/07/g-s1-47322/musks-team-takes-control-of-key-systems-at-consumer-financial-protection-bureau.

[10] Cuneyt Dil, *Elon Musk's DOGE staffers Sleep in IKEA beds in Federal Offices*, Axios D.C. (Mar.10, 2025), https://www.axios.com/local/washington-dc/2025/03/10/elon-musk-doge-sleep-ikea-beds-federal-buildings.

implementing the DOGE Agenda within each agency report to "Agency Heads" rather than USDS. *See* First DOGE EO § 3(c). The government has claimed in other litigation that DOGE Team activities should therefore not be considered in determining DOGE's agency status.[11] But whether they *actually* report to Agency Heads, versus the central DOGE team, is contested, and understanding who *actually* directs and causes DOGE's cuts to contracts, budgets, and personnel is essential to understanding whether DOGE wields substantial independent authority.

The government has not been consistent or transparent on this question. For example, it has informed American Oversight, through responses to FOIA requests not at issue here, that the Department of the Interior, the Centers for Disease Control and Prevention, and the Food and Drug Administration do not have "DOGE team[s]."[12] But, according to public reporting, each such agency has had its staff and/or budget cut by DOGE.[13] If DOGE Teams are not imposing these cuts, who is? Likewise, just a few weeks after Musk-linked individuals (including Steve Davis and

---

[11] *See, e.g.*, App. to Stay Orders at 5, 18, 28, *In re U.S. DOGE Service, et al.*, No. 24A1122 (May 21, 2025), https://www.supremecourt.gov/DocketPDF/24/24A1122/359271/20250521095150101_In%20re%20USDS%20Stay%20Application_final%20a.pdf.

[12] *See* Final FOIA Response Letter from U.S. Dep't of the Interior to American Oversight (Apr. 3, 2025), *available at* https://www.documentcloud.org/documents/25952464-response-to-american-oversight-foia-request-to-department-of-the-interior-multi-doi-25-0654-nrr/; Final FOIA Response Letter from Ctrs. for Disease Control & Prevention to American Oversight (Mar. 25, 2025), *available at* https://www.documentcloud.org/documents/25952465-response-to-american-oversight-foia-request-to-the-cdc-multi-hhs-cdc-25-0663-nrr/; Final FOIA Response Email from Food & Drug Admin. to American Oversight (Mar. 19, 2025), *available at* https://www.documentcloud.org/documents/25952467-response-to-american-oversight-foia-request-to-the-fda-multi-hhs-fda-25-0667-nrr/.

[13] Jenna McLaughlin et al., *How Cuts and $1 Payment Limits Are Making Federal Jobs Harder*, NPR (Mar. 20, 2025, 5:00 AM), https://www.npr.org/2025/03/20/nx-s1-5333655/interior-department-budget-cuts-doge; Yuki Noguchi, *DOGE Cut a CDC Team As It Was About to Start a Project to Help N.C. Flood Victims*, NPR (Apr. 15, 2025, 9:00 AM), https://www.npr.org/sections/shots-health-news/2025/04/15/nx-s1-5364897/cdc-disaster-doge-trump-layoffs-hurricane-helene; Kit Eaton, *DOGE Cuts Force the FDA to Recruit Volunteers to Finish Drug Reviews*, Inc. (Apr. 29, 2025), https://www.inc.com/kit-eaton/doge-fired-drug-testing-experts-the-fda-needs-volunteers-to-finish-their-work/91182110.

several staffers identified as part of DOGE Teams at other agencies) arrived at the General Services Administration ("GSA") and attempted "to use [information technology] credentials from [EOP] to access GSA laptops and internal GSA infrastructure,"[14] the acting administrator of the GSA nonetheless told an all-hands staff meeting, "There is no DOGE team inside of GSA."[15] Agency DOGE Teams that do not exist cannot implement cuts within agencies; discovery is necessary to determine whether in fact core DOGE personnel are taking these actions.

Moreover, it appears that DOGE has detailed core DOGE staff to multiple agencies, undercutting the notion that DOGE Teams are those agencies' employees. For example, the Department of Agriculture informed American Oversight that its DOGE team includes detailees Jordan Wick and Gavin Kliger.[16] But the government has elsewhere identified Wick as a USDS employee who is "detailed to at least six agencies besides [the Consumer Financial Protection Bureau] and USDS."[17] Reporting identifies Kliger as "one of Mr. Musk's most prolific foot soldiers" involved in DOGE activities at USAID, Internal Revenue Service, and the CFPB.[18] Other DOGE employees are also apparently spread across multiple agencies:

- Marko Elez, a Department of Labor employee detailed to USDS, is also "detailed to or otherwise employed" at "four other agencies" in addition to USDS.[19]

---

[14] Makena Kelly & Zoë Schiffer, *Elon Musk's Friends Have Infiltrated Another Government Agency*, WIRED (Jan. 31, 2025, 6:27 PM), https://www.wired.com/story/elon-musk-lackeys-general-services-administration/.

[15] Zoë Schiffer & Kate Knibbs, *'Who Is DOGE?' Has Become a Metaphysical Question*, WIRED (Apr. 24, 2025 1:27 PM), https://www.wired.com/story/elon-musk-doge-mystery-general-services-administration/.

[16] Final FOIA Response Letter from U.S. Dep't of Agric. to American Oversight, April 10, 2025, *available at* https://www.documentcloud.org/documents/25952466-response-to-american-oversight-foia-request-to-the-department-of-agriculture-multi-usda-25-0652-a/.

[17] Defs.' Objs. and Resps. to Pls.' Reqs. for Expedited Disc. at 13, 18, *AFL-CIO* v. *Dep't of Labor*, 25-cv-0339 (D.D.C. Mar. 29, 2025), ECF No. No. 73-2.

[18] See *The People Carrying Out Musk's Plans at DOGE*, N.Y. Times (updated May 28, 2025), https://www.nytimes.com/interactive/2025/02/27/us/politics/doge-staff-list.html.

[19] *Id*. n. 18.

- Luke Farritor, a GSA employee, is detailed to HHS and USDS; he was previously detailed to the Consumer Financial Protection Bureau.[20] Farritor has received access to sensitive data systems at HHS[21] and the Department of Energy's information technology system.[22]

- Kyle Schutt, a GSA employee, has been detailed to HHS and USDS.[23]

- Edward Coristine, a GSA employee, has been detailed to HHS and USDS.[24] Coristine reportedly has gained physical access to the Cybersecurity and Infrastructure Security Agency and has a Department of Homeland Security email address.[25]

The only certainty is that questions about DOGE Team members—including on whose authority they act—cannot be answered solely by a formalistic examination of the DOGE executive orders. But the answers are essential to deciding whether DOGE is subject to FOIA. If, as it appears, DOGE wields its power by repeatedly deploying the same staff to multiple agencies, the Court need not accept as true the government's formalistic separation of the Agency DOGE Teams from DOGE itself. American Oversight is therefore entitled to take discovery on topics such as the identities of the individuals designated as members of Agency DOGE Teams, the identities of DOGE detailees from and to other agencies, their authority and chain of command.

### C. What is DOGE's Structure?

DOGE's internal structure is similarly critical to a determination of its agency status. *See Meyer*, 981 F.2d at 1296 ("[T]he structure of the group is important in determining its relative

---

[20] *Id.* at 13.

[21] *Id.* at 8.

[22] Ella Nilsen & Sean Lyngaas, *Trump Energy Secretary Allowed 23-Year-Old DOGE Rep to Access IT Systems Over Objections from General Counsel*, CNN (updated Feb. 7, 2025, 2:54 PM), https://www.cnn.com/2025/02/06/climate/doge-energy-department-trump/index.html.

[23] *Id.* n. 18 at 11.

[24] *Id.* at 9.

[25] David DiMolfetta, *DOGE Employee Edward Coristine Lands at CISA with DHS Email*, NextGov (Feb. 19, 2025), https://www.nextgov.com/cybersecurity/2025/02/doge-employee-edward-coristine-lands-cisa-dhs-email/403126/. Coristine sometimes uses the online alias "Big Balls." *See, e.g.,* Raphael Satter, *Exclusive: DOGE Staffer, 'Big Balls', Provided Tech Support to Cybercrime Ring, Records Show*, USA Today (Mar. 26, 2025 7:11 AM), https://www.usatoday.com/story/news/politics/2025/03/26/doge-staffer-big-balls-edward-coristine/82667607007/.

independence from the President."). The executive orders regarding DOGE do not clarify its structure. The First DOGE EO does not clarify whether the Department of Government Efficiency, USDS and USDTO collectively compose all of DOGE, or whether additional organizations are involved in that Department.[26] Nor does it—or subsequent orders—define the relationship between the Department and the USDS and USDSTO, nor the relationship between Agency DOGE Teams and USDS/USDSTO, nor the lines of reporting within and between these various entities.

Because the executive orders do not answer these questions, discovery into DOGE's internal structure and lines of authority is required to appropriately assess its agency status. American Oversight is therefore entitled to take discovery on topics such as DOGE's internal structure and operation units, lines of reporting, and mission statements.

### D. Is DOGE Organizationally and Operationally "Proximate" to the President?

The identity and authority of DOGE's ultimate decisionmakers is also relevant to a determination of its agency status. The D.C. Circuit has long held that "proximity to the President" is an important factor in assessing an entity's agency status. *Armstrong*, 90 F.3d at 558 ("The closer an entity is to the President, the more it is like the White House staff, which solely advises and assists the President, and the less it is like an agency to which substantial independent authority has been delegated."); *see also Meyer*, 981 F.2d at 1293 ("Congress intended the phrase 'solely to advise and assist' the President to refer to entities whose characteristics and functions were similar to those of the President's immediate personal staff."). Furthermore, understanding which officials are actually part of an EOP entity is critical to knowing which officials' records must be preserved and produced in accordance with FOIA and the Federal Records Act. *See Kissinger*, 445 U.S. at

---

[26] In other litigation, the government has adopted the litigation position that the Department of Government Efficiency is an "umbrella term for the executive-wide initiative," not a standalone entity. *See, e.g.*, App. to Stay at 17, *supra* note 12. That position, however, belies the plain meaning of the word "Department," and is not what the executive orders say.

156 (finding information in which Kissinger had "acted in his capacity as a Presidential adviser, only" not subject to FOIA, without deciding "when records which . . . merely 'relate to' the affairs of a FOIA agency become records of that agency").

Discovery is necessary to determine who is actually leading DOGE, and whether that person has the necessary proximity to the President to render them the President's "immediate personal staff." *See id*. On paper, the USDS Administrator runs USDS and USDSTO and reports to the White House Chief of Staff. *See* First DOGE EO and Ex. 3 (Gleason Decl.). But facts presented by the government in other proceedings cast doubt on that structure. *See supra* at 5–6. For instance, no explanation has been offered for how Ms. Gleason can serve as DOGE's Acting Administrator while also serving as a full-time employee of HHS. *See* Exs 3 and 4. Moreover, public statements by Trump and Musk name Musk as DOGE's leader. *See* Am. Compl. ¶¶16, 45–47*, 52–55, 63. While Musk may enjoy closer proximity to the President than Gleason, his statements about his activities suggest much more than merely advising and assisting the President, *see, e.g.*, *id.* ¶¶ 46, 63, making discovery necessary to identify his actual role and responsibilities.

American Oversight is entitled to discover who actually runs (or ran) DOGE and the actions that person actually took in that role, because absent that information, it is impossible to assess the relationship between DOGE's leadership and the President. Moreover, American Oversight is entitled to probe the role that Musk plays or played as part of DOGE, not only to inform the question of DOGE's agency status, but also because several FOIA requests underlying this lawsuit seek records from Musk. *See* Am. Compl. ¶¶ 96–98, 116–123. To determine whether American Oversight is entitled to the full relief sought—namely, records that include Elon Musk's communications—the Court must have a full picture of Musk's role in running DOGE.

In sum, the government may not shield executive branch entities from fundamental legal

requirements by clever structures or formalisms. *See Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 397 (1995) (Scalia, J.) (rejecting argument that government can "evade the most solemn obligations" by choice of entity's structure); *Meyer*, 981 F.2d at 1296. The public record, including the government's own statements, contradict any claim that DOGE is merely "advisory." American Oversight is entitled to discover the truth.

## CONCLUSION

For the foregoing reasons, American Oversight respectfully requests the Court grant its Motion for Discovery and order (1) the DOGE Defendants to respond to the attached Interrogatories, Requests for Documents, and Requests for Admission within twenty (20) days; (2) the parties to submit a joint status report within ten (10) days of American Oversight's receipt of DOGE's discovery responses as to whether depositions are necessary; and (3) allow Plaintiff to take depositions of DOGE (pursuant to Rule 30(b)(6)) and Amy Gleason, if needed, based on DOGE's responses to the attached requests.

Dated: June 2, 2025

Respectfully submitted,

*/s/ Elizabeth Haddix*
Elizabeth Haddix
D.C. Bar No. 90019750
David Kronig
D.C. Bar No. 1030649
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 869-5246
Elizabeth.haddix@americanoversight.org

*Counsel for Plaintiff*