**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN OVERSIGHT, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| | ) |
| | ) |
| v. | ) |
| | ) Case No. 25-0409 (BAH) |
| U.S. DEPARTMENT OF | ) |
| GOVERNMENT EFFICIENCY, *et a*l., | ) |
| | ) |
| | ) |
| *Defendants.* | ) |
| | ) |
| | ) |

**PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE**
**REGARDING A STAY OF PROCEEDINGS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

PROCEDURAL BACKGROUND AND STATUS REPORT ........................................... 3

LEGAL STANDARD ........................................................................................................ 5

ARGUMENT ..................................................................................................................... 6

    I.      COURTS STRONGLY DISFAVOR AND ROUTINELY DENY STAYS BASED ON PROCEEDINGS IN A SEPARATE, UNRELATED CASE. ........................... 6

    II.     A STAY WILL NOT SERVE JUDICIAL ECONOMY BECAUSE DOGE'S AGENCY STATUS IS NOT CURRENTLY PENDING IN *CREW*. ...................... 8

    III.    A STAY WILL SIGNIFICANTLY HARM AMERICAN OVERSIGHT, BUT DEFENDANTS WILL SUFFER NO HARDSHIP IF THE CASE PROCEEDS. ...................................................................................................... 11

        A.     American Oversight Will Suffer Significant Harm from a Stay Pending a Final Determination in *CREW*. ................................................. 14

            1.     A Stay Improperly Denies American Oversight the Right to Litigate Its Case. ...................................................................... 15

            2.     American Oversight Will Be Harmed by the Delay in Adjudication of its FOIA Requests. ......................................... 15

        B.     Defendants Suffer No Hardship nor Inequity in Being Required to Go Forward. ......................................................................................... 16

CONCLUSION ................................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allina Health Servs. v. Sebelius*,
   756 F. Supp. 2d 61 (D.D.C. 2010) ............................................................................. 13

*Asylumworks v. Mayorkas*,
   No. 20-cv-3815 (BAH), 2021 WL 2227335 (D.D.C. June 1, 2021) ......................................... 17

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
   668 F.3d 724 (D.C. Cir. 2012) .......................................................................... passim

*Blumenthal v. Trump*,
   No. CV 17-1154 (EGS), 2019 WL 3948478 (D.D.C. Aug. 21, 2019) ...................................... 13

*Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*,
   498 F. Supp. 3d 87 (D.D.C. 2020) ........................................................................ 16

*Budinich v. Becton Dickinson & Co.*,
   486 U.S. 196 (1988) ....................................................................................... 1

*Campaign Legal Ctr. v. 45Committee, Inc.*,
   No. 22-CV-01115 (APM), 2022 WL 3088595 (D.D.C. July 18, 2022) ..................................... 7

*Catlin v. United States*,
   324 U.S. 229 (1945) ....................................................................................... 1

*Citizens for Responsibility and Ethics in Washington v. U.S. DOGE Service*,
   No. 25-cv-511 (D.D.C. 2025) ........................................................................ passim

*Citizens for Responsibility and Ethics in Washington v. U.S. DOGE Service*,
   No. 25-cv-511 (D.D.C.) (Cooper, J.), on Petition for Writ of Mandamus, No. 25-5130
   (D.C. Cir.). ........................................................................................... 1, 9

*Cntr. for Biological Diversity v. Office of Mgmt. & Budget*,
   No. 25-cv-165-BAH (D.D.C. July 10, 2025) .............................................................. 13

*Clinton v. Jones*,
   520 U.S. 681 (1997) ....................................................................................... 5

*Colo. River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976) .................................................................................... 1, 5

*CREW v. US DOGE Service*,
  769 F. Supp. 3d 8 (D.D.C. 2025) ................................................................. 4

*Ctr. for Biological Diversity v. Ross*,
  419 F. Supp. 3d 16 (D.D.C. 2019) ............................................. 6, 11, 12, 17

*Ctr. for Pub. Integrity v. United States Dep't of Def.*,
  411 F. Supp. 3d 5 (D.D.C. 2019) ............................................................... 16

*Dellinger v. Mitchell*,
  442 F.2d 782 (D.C. Cir. 1971) ......................................................... 2, 7, 11

*Greenlaw v. United States*,
  554 U.S. 237 (2008) .................................................................................... 17

*Gregory v. Stetson*,
  133 U.S. 579 (1890) .................................................................................. 1, 7

*Hisler v. Gallaudet Univ.*,
  344 F. Supp. 2d 29 (D.D.C. 2004) ............................................................. 14

*King v. Cessna Aircraft Co.*,
  505 F.3d 1160 (11th Cir. 2007) .................................................................... 8

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ........................................................................... Passim

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) .................................................................................. 7, 11

*MSW Media v. U.S. DOGE Serv.*,
  No. 25-cv-1933-JEB (D.D.C. July 14, 2025) ......................................... 7, 11

*Nat'l Indus. for Blind v. Dep't of Veterans*,
  296 F. Supp. 3d 131 (D.D.C. 2017) ..................................... 3, 6, 12, 14

*Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*,
  437 U.S. 214 (1978) .................................................................................... 15

*OCA - Asian Pac. Am. Advocs. v. Rubio*,
  No. CV 25-287 (TJK), 2025 WL 1393153 (D.D.C. May 14, 2025) .............. 6, 14, 17

*Payne Enters., Inc. v. United States*,
  837 F.2d 486 (D.C. Cir. 1988) .................................................................... 15

*Philipp v. Fed. Republic of Germany*,
   253 F. Supp. 3d 84 (D.D.C. 2017) ....................................................................... 13

*Project on Gov't Oversight v. Trump*,
   No. 25-cv-527-JEB (D.D.C. July 18, 2025) ........................................................ 13

*Project on Gov't Oversight v. U.S. DOGE Serv.*,
   No. 25-cv-1295 (D.D.C. July 18, 2025) .............................................................. 13

*Ready to Win v. Fed. Election Comm'n*,
   No. CV 22-3282 (RDM), 2023 WL 10512144 (D.D.C. July 28, 2023) .................. 12

*Sprint Comms., Inc. v. Jacobs*,
   571 U.S. 69 (2013) .......................................................................................... 6, 7

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) .............................................................................................. 7

*Trump v. CASA, Inc.*,
   145 S. Ct. 2540 (2025) ................................................................................ 1, 7, 17

*U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*,
   489 U.S. 749 (1989) ............................................................................................ 15

*United States v. Honeywell Int'l*,
   20 F. Supp. 3d 129 (D.D.C. 2013) ...................................................................... 17

*Univ. of Colo. Health at Mem'l Hosp. v. Burwell*,
   233 F. Supp. 3d 69 (D.D.C. 2017) ...................................................................... 13

**Statutes**
5 U.S.C. § 552 ......................................................................................................... 1
44 U.S.C.S. § 2201 .................................................................................................. 4

**Rules**
Federal Rule of Appellate Procedure 13 ................................................................ 10
Federal Rule of Civil Procedure 56(d) .................................................................... 8

**Other Authorities**
Executive Order 14158 ............................................................................................. 4

## EXHIBIT INDEX

**Exhibit 1**    Second Declaration of Elizabeth Haddix, with Defendant OMB's August 5, 2025
FOIA responses as Attachment A.

**Exhibit 2**    *Defendants' Motion to Stay Proceedings and Memorandum in Support Thereof*,
*American Oversight v. U.S. Department of Governmental Efficiency et al.*, Case
1:25-cv-01251-RC (D.D.C. Aug. 5, 2025), ECF No. 15.

**Exhibit 3**    *Plaintiff's Opposition to Defendants' Motion to Stay Proceedings*, *American
Oversight v. U.S. Department of Governmental Efficiency et al.*, Case 1:25-cv-
01251-RC (D.D.C. Aug. 19, 2025), ECF No. 17.

## INTRODUCTION

Plaintiff American Oversight respectfully submits this response to the Court's August 20, 2025 Minute Order directing the parties to "show cause why this case should not be stayed pending a final decision[1] in *Citizens for Responsibility and Ethics in Washington v. U.S. DOGE Service*, No. 25-cv-511 (D.D.C.) (Cooper, J.), on Petition for Writ of Mandamus, No. 25-5130 (D.C. Cir.)" (hereinafter "*CREW*"). The Court should not stay American Oversight's lawsuit, for three reasons. First, federal courts have a responsibility to resolve the cases properly before them, *see, e.g., Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (highlighting "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them"). Consequently, stays based on proceedings between unrelated parties are extraordinary and presumptively improper. *See Landis v. N. Am. Co*., 299 U.S. 248, 255–56 (1936) ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."); *see also Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2552 (2025) ("[A] court cannot adjudicate directly upon a person's right without having him either actually or constructively before it." (quoting *Gregory v. Stetson*, 133 U.S. 579, 586 (1890)). Moreover, the Supreme Court has held indefinite and prolonged stays, like the one considered here, to be "immoderate and hence unlawful," *Landis*, 299 U.S. at 257, absent a

---

[1] "A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199 (1988) (quoting *Catlin v. United States,* 324 U.S. 229, 233 (1945)). Plaintiff presumes that by "final decision," the Court means a final decision on the question of whether Defendants DOGE, USDS and U.S. DOGE Service Temporary Organization (referred to collectively as "DOGE" in this lawsuit) are, either separately or collectively, agencies subject to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). Notably, however, if that issue is finally resolved in FOIA plaintiffs' favor, further litigation on the merits of the FOIA claims will proceed to a final decision. As discussed *infra*, that will likely take years in *CREW*.

showing of "pressing need." *Id.* at 255. There is no "pressing need" to stay this case pending a "final decision" in *CREW. See, e.g., Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971) (explaining that, while a "pressing need" might exist to stay discovery in a civil action—e.g., so as not to circumvent orders in a related criminal case that limited pretrial discovery by defendants—it does not exist where the civil plaintiff is not a defendant in the criminal case).

Second, a stay will not serve the interests of judicial economy because the threshold jurisdictional question of whether DOGE is an agency subject to the FOIA is not currently pending before any court in *CREW* and is not likely to be pending for many months or even years.[2] The only issue that could be said to be currently pending in that case is whether *that* plaintiff's particular discovery requests are sufficiently narrow under the Supreme Court's June 6, 2025 order, which stayed discovery *only in that case. See U.S Doge Serv. v. CREW*, No. 24A1222, slip op. at 1 (U.S. June 6, 2025), *available at* https://www.supremecourt.gov/orders/courtorders/060625zr_5426.pdf (hereinafter, "June 6 order"). Meanwhile, pending in *this case* are *American Oversight's* proposed discovery requests—which, while different from the plaintiff's requests in *CREW,* conform to the Supreme Court's narrowing instruction in that case: none of the requests awaiting this Court's approval seek information about DOGE's recommendations to federal agencies, nor whether those recommendations were followed. *Compare* June 6 order *with* Pl.'s Reply ISO Mot. for Disc. at 2

---

[2] Notably, the Office of Management and Budget (OMB), whose agency status is not in question, is also a defendant in this case, and, as noted below has failed to respond to five of American Oversight's eight FOIA requests at issue in this case, despite this Court's March 5, 2025 standing order, ECF No. 6, requiring Defendants to "within *fourteen days*" provide an estimate "of when the agency expects a final determination to be made" and "a proposed schedule for production of responsive records [. . .]." Standing Order 4(b)(ii)(b), Mar. 5, 2025, ECF No. 6. To date, OMB has provided Plaintiff no such estimate, nor determination of what records will be produced or withheld, nor any responsive documents. As discussed further below, proceeding against OMB while staying claims against DOGE thwarts judicial economy.

& Ex. 6, ECF No. 23 (narrowing proposed requested discovery following Supreme Court order in *CREW*).

Third, a stay is improper because American Oversight would suffer significant harm, not only by being deprived of the right to litigate its case, but due to the indefinite—and likely years long—delay of an adjudication of the merits of its FOIA claims while *CREW* drags on through the expiration of the deadline for the government's petition for writ of certiorari, closure of discovery (after likely attendant delays and motions practice), summary judgment briefing and appeals. A stay is thus particularly harmful because it will block transparency into DOGE's sweeping actions across the executive branch—on which the records American Oversight seeks will shed light.

Meanwhile, Defendants DOGE and OMB can show no hardship from being made to proceed. *See Nat'l Indus. for Blind v. Dep't of Veterans Affs.*, 296 F. Supp. 3d 131, 141 (D.D.C. 2017) (reasoning that a mere "possibility of inconsistent judgments" in separate cases is insufficient on its own to constitute "hardship").

For all these reasons, this case should go forward.

## PROCEDURAL BACKGROUND AND STATUS REPORT

On January 30, 2025, American Oversight submitted two urgent FOIA requests, seeking expedited processing, for records regarding President Trump's January 24, 2025 removal of inspectors general from at least seventeen (17) federal agencies. Am. Compl. ¶¶ 94–108, ECF No. 5, Exs. A–B, ECF Nos. 5-9, 5-10. On February 3, 2025, American Oversight sent six more FOIA requests to DOGE: two seeking records of the former U.S. Digital Service from before Trump's inauguration, concerning communications between that agency and the then-nascent, nongovernmental DOGE, *see* Am. Compl. ¶¶ 109–115, ECF No. 5, Exs. E, G, ECF Nos. 5-13, 5-15; and four seeking, *inter alia*, records concerning DOGE's communications with external entities, its staffing, Elon Musk's employment and calendars. *See* Am. Compl. ¶¶ 116–128, ECF

No. 5, Exs. I, K, M, O, ECF Nos. 5-17, 5-19, 5-21, 5-23. When Defendants did not respond, American Oversight initiated this action on February 11, 2025, ECF No. 1, and filed an Amended Complaint on March 5, 2025, ECF No. 5. The Amended Complaint included concrete, specific factual allegations about DOGE's structure, authority, and operations. *See id.* ¶¶ 31–40, 56–72, 78, 91–92.

On March 10, 2025, another court in this district found that DOGE is likely an agency subject to FOIA and ordered DOGE to preserve and release records sought by that requester. *See CREW v. US DOGE Service*, 769 F. Supp. 3d 8, 25 (D.D.C. 2025). Two days later, DOGE emailed American Oversight regarding the eight FOIA requests at issue in this case, stating:

> As set forth in Executive Order 14158, Establishing and Implementing the President's 'Department of Government Efficiency,' USDS sits within the Executive Office of the President, and the USDS Administrator reports to the President's Chief of Staff. We write now to inform you that USDS is subject to the Presidential Records Act, 44 U.S.C.S. § 2201 et seq., and is not subject to FOIA. We therefore decline your request.

*See* Decl. of Elizabeth Haddix, Mar. 21, 2025, ECF No. 10-1, and Ex. 1, ECF No. 10-2. On March 24, 2025, American Oversight asked the Court to order DOGE to preserve all records potentially responsive to its eight FOIA requests, and to confirm whether all responsive records had been preserved to date. Pl.'s Mot. Preserv. Order, ECF No. 12. The Court so ordered on April 2, 2025. Order, Apr. 2, 2025, ECF No. 15.

Defendants filed an Answer on April 21, 2025, ECF No. 18, which they amended on April 24, 2025, *see* Am. Answer, ECF No. 19. The Amended Answer denies that DOGE is an agency subject to FOIA, *see id.* ¶¶ 6–10, specifically denying that its duties and authority go beyond simply advising the President, *id.* ¶ 10. Plaintiff therefore requested limited discovery on that threshold question, which Defendants opposed, and on May 5, 2025, the parties submitted a joint

status report which included their dispute concerning American Oversight's request for discovery. *See* JSR, ECF No. 20. Pursuant to the Court's May 23, 2025 minute order, Plaintiff filed a motion for limited discovery on the question of DOGE's independent authority, ECF No. 21 ("Pl.'s Mot.") with proposed properly scoped discovery requests, ECF No. 21-1. As of June 23, 2025, that motion is fully briefed and pending.

On August 5, 2025, Defendant OMB responded to three of the eight FOIA requests at issue, stating that it has no records responsive to those three requests and that American Oversight's remaining five requests at issue in this litigation "remain pending." Ex. 1, Attachment A. On August 20, 2025, through counsel, American Oversight asked OMB to provide a processing schedule for the remaining five requests; however, OMB has yet to do so, nor has it begun producing responsive records. See Ex. 1.

Also on August 20, 2025, this Court ordered the parties to show cause "why this case should not be stayed pending a final decision in [*CREW*]" by September 3, 2025. Min. Order. American Oversight hereby respectfully responds to that order.

## LEGAL STANDARD

Federal courts have a duty to decide cases under their jurisdiction. *See, e.g., Colo. River Water Conservation Dist.*, 424 U.S. at 817 (highlighting "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them"). Although a federal district court "has broad discretion to stay proceedings as an incident to its power to control its own docket," *Clinton v. Jones*, 520 U.S. 681, 706 (1997), it "must weigh competing interests and maintain an even balance" between the court's interests in judicial economy and any possible hardship to the parties, *Landis*, 299 U.S. at 254–55. And while courts routinely stay proceedings pending interlocutory appeals in the *same* case, "it is well established that a stay pending the resolution of *unrelated* legal proceedings is an extraordinary remedy." *Nat'l Indus. for Blind*, 296 F. Supp. 3d at 137 (denying

stay) (emphasis added). "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. "In *Landis*, the Supreme Court instructed that a court abuses its discretion in ordering a stay 'of indefinite duration in the absence of a pressing need.'" *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 731–32 (D.C. Cir. 2012) ("*Belize*") (quoting *Landis*, 299 U.S. at 255).

Notably, "the party seeking a stay bears the burden of showing that the stay is needed and warranted," and if there is "even a fair possibility" that the nonmovant would be "adversely affect[ed]" by a stay, "the movant . . . must demonstrate a 'clear case of hardship or inequity in being required to go forward.'" *Nat'l Indus. for Blind*, 296 F. Supp. 3d at 137–38 (quoting *Landis*, 299 U.S. at 255); *see also Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 20 (D.D.C. 2019) ("[I]f it determines that there is a fair possibility that the stay will work damage to Plaintiffs' interests, [the movant]'s burden becomes even heavier, for it must then show a clear case of hardship or inequity in being required to go forward." (citation modified)). "The default . . . is for the litigation to continue as usual, and 'the burden of making out the justice and wisdom of a departure from the beaten track lay[s] heavily on the movants." *OCA - Asian Pac. Am. Advocs. v. Rubio*, No. CV 25-287 (TJK), 2025 WL 1393153, at *1 (D.D.C. May 14, 2025) (citation modified) (denying stay and quoting *Landis*, 299 U.S. at 256).

## ARGUMENT

## I. COURTS STRONGLY DISFAVOR AND ROUTINELY DENY STAYS BASED ON PROCEEDINGS IN A SEPARATE, UNRELATED CASE.

The Supreme Court has repeatedly emphasized, across multiple doctrinal areas, the principle that federal courts have a duty to resolve the cases before them. *See, e.g.*, *Sprint Comms., Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) (a federal court should not abstain "simply because a pending

state-court proceeding involves the same subject matter"); *Taylor v. Sturgell*, 553 U.S. 880, 884–85 (2008) (rejecting defendants' claim that a judgment against one plaintiff binds another, unrelated plaintiff raising a similar issue in another case); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983) (noting that "a stay is as much a refusal to exercise federal jurisdiction as a dismissal"). In addition, as the Supreme Court emphasized just this Term, "a court cannot adjudicate directly upon a person's right without having him either actually or constructively before it. This principle is fundamental." *CASA, Inc.*, 145 S. Ct. at 2552 (quoting *Gregory v. Stetson*, 133 U.S. 579, 586 (1890)). Consequently, nearly a century of Circuit and Supreme Court precedent affirms that stays based on proceedings between unrelated parties—as is the case here—are improper. *See, e.g.*, *Landis*, 299 U.S. at 255–56 ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."). Indeed, the undersigned has found *no case* from this Circuit where a matter was stayed over the objection of a litigant pending resolution of some other case involving an unrelated party.

Moreover, an indefinite stay (even one based on a related proceeding involving the same parties, which is *not* the case here) must be supported by "pressing need." *Belize*, 668 F.3d at 732–33 (noting that in *Landis,* the Supreme Court held that an "indefinite stay, lacking justification by any pressing need, exceeded the bounds of any inherent authority the district court may have had to stay proceedings in the interest of judicial economy."). *See, e.g.*, *Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971) (reasoning that there is no "pressing need" to protect the integrity of criminal proceedings where the civil plaintiff is not a defendant in the criminal case); *Campaign Legal Ctr. v. 45Committee, Inc.*, No. 22-CV-01115 (APM), 2022 WL 3088595, at *1 (D.D.C. July 18, 2022) (holding that "without greater certainty as to the precise outcome of [the proceedings on

which the stay is based] and their timing, the mere possibility of time and resource savings does not rise to the level of 'pressing need'").

There is no pressing need for a stay here.

*Belize* is instructive on what must be shown to satisfy the "pressing need" requirement. There, after extensive analysis of Supreme Court precedent limiting courts' authority to issue stays, the D.C. Circuit considered the case on which the defendant sought to base the requested stay, and held that the "pressing need" standard is not met where "the record fails to show either what a 'resolution' of that case would entail or when such a resolution is likely to be reached," noting that such a stay impermissibly has "the legal effect of preventing [the plaintiff] from proceeding with [its] claims in federal court for an indefinite period of time, potentially for years," 668 F.3d at 732 (quoting *King v. Cessna Aircraft Co.,* 505 F.3d 1160, 1169 (11th Cir. 2007)). Here, similarly, it remains to be seen what a "resolution" in *CREW* will entail, but what is certain is that a "final decision" will not happen for months or even years, and there is no "pressing need" to stay this case while CREW litigates its case. For those reasons, no stay should issue.

In addition, such a stay will harm the Plaintiff and fail to further judicial economy; for those reasons, too, this case should proceed.

## II.    A STAY WILL NOT SERVE JUDICIAL ECONOMY BECAUSE DOGE'S AGENCY STATUS IS NOT CURRENTLY PENDING IN CREW.

A summary of the proceedings in *CREW* shows that a stay of this case pending a final decision in that one would be an "immoderate and hence unlawful," *Landis*, 299 U.S. at 257, stay of indefinite duration with no purpose in judicial economy. In *CREW*, following DOGE's motion for summary judgment on the sole grounds that DOGE is not an agency subject to FOIA and the FRA, CREW filed a motion pursuant to Federal Rule of Civil Procedure 56(d) for expedited discovery to ascertain facts necessary to determine whether DOGE wields substantial authority

independent of the President. *See* Pl.'s Mot. to Expedite Disc., *CREW v. U.S. DOGE Serv.*, No. 25-cv-511-CRC (D.D.C. Mar. 27, 2025), ECF No. 27. The district court granted that motion in part, 349 F.R.D. 1, 4 (D.D.C. 2025), and DOGE sought a writ of mandamus from the Court of Appeals to halt the district court's order, *In re U.S. DOGE Serv.*, No. 25-5130, 2025 WL 1393222, at *1 (D.C. Cir. May 14, 2025). The Court of Appeals denied the petition for mandamus, *id.*, and the government filed an emergency application with the U.S. Supreme Court to stay the orders of the circuit and district courts. *See* Application to Stay the Orders of the U.S. District Court for the District of Columbia Pending Certiorari or Mandamus and Request for Immediate Administrative Stay, *In re U.S. DOGE Serv.*, No. 25-5130 (May 21, 2025).

The government's application argued, in essence, that (1) DOGE's agency status is a question of law that depends solely on the text of the executive orders establishing it and delineating its purported responsibilities; (2) the separation of powers doctrine precludes any discovery against any entity within the Executive Office of the President ("EOP"); and (3) in the alternative, allowing discovery about DOGE's "recommendations" was overbroad and intrusive and that any discovery must be more narrowly tailored. *See id*. Although the Supreme Court did grant a stay, it effectively rejected the government's first two arguments: the only substantive limitation the Court placed on discovery was to instruct the D.C. Circuit to narrow CREW's requests regarding DOGE's "recommendations and whether those recommendations were followed" because "inquiry into whether an entity is an agency for the purposes of the Freedom of Information Act cannot turn on the entity's ability to persuade." Order at 1, *In re U.S. DOGE Serv.*, No. 25-5130 (June 6, 2025). The Supreme Court thus remanded to the Court of Appeals to "take appropriate action to narrow the April 15 discovery order consistent with this order," and ordered that "[t]he April 15, 2025, and May 20, 2025, orders of the United States District Court for the

District of Columbia, case No. 25-cv-511, are stayed pending remanded consideration at the Court

of Appeals, and disposition of the petition for a writ of certiorari, if such writ is timely sought."

*Id.*, slip op. at 2. Under Federal Rule of Appellate Procedure 13, a party has ninety (90) days after

entry of judgment to petition for review on certiorari.

On July 14, 2025, on CREW's motion for summary disposition, the Court of Appeals

narrowed the scope of discovery in accord with the guidance from the Supreme Court. *See* Order,

*In re DOGE Serv.*, No. 25-1530 (D.C. Cir. July 14, 2025). The district court subsequently issued a

discovery order modifying the discovery as ordered by the Court of Appeals but stayed its schedule

"pending disposition of any petition for a writ of certiorari, if such writ is timely sought." *CREW*,

ECF No. 49. On July 25, the district court denied DOGE's motion for summary judgment, which

relied solely on the argument that DOGE is not an agency subject to FOIA and the FRA, "as

premature, given the potential for discovery following the disposition of any petition for a writ of

certiorari that may be filed in this case." Minute Order, *CREW* (D.D.C.  July 25, 2025). DOGE did

not appeal that decision. Thus, the issue of DOGE's agency status is not currently pending in

*CREW*.

On August 28, 2025, the government filed a Petition for Rehearing or Rehearing in Banc

of the D.C. Circuit's July 14 order, contending that it "fails to comply with the Supreme Court's

instructions, and . . .conflicts with precedent explaining that FOIA status turns on legal authority."

Pet. for Rehearing or Rehearing En Banc at 3, *In re DOGE Serv.*, No. 25-1530 (D.C. Cir. Aug. 28,

2025). This additional petition delays still further a "final decision" in *CREW*, rendering the

duration of any related stay even more indefinite, as the judgment from which commences the 90-

day period to file a petition for writ of certiorari is no longer the July 14 order, but whatever order

may follow. However, what is certain is that on June 6, 20205, the Supreme Court declined to hold

that discovery was inappropriate or unavailable to examine whether DOGE is an agency, but instead, faced with the full breadth of discovery propounded by CREW, precluded discovery into "recommendations" DOGE has made to agencies.

Thus the only issue pending in *CREW* is whether CREW's discovery requests, as narrowed and approved by the D.C. Circuit on July 14 and ordered by the district court on July 15, are properly scoped. They appear to be, based on the Supreme Court's June 6, 2025 order; more importantly to the question presented here, the merits question of DOGE's agency status is not yet pending in *CREW* even at the district court level, much less in the D.C. Circuit or Supreme Court, and is not likely to be pending for many months or years. Furthermore, this case also involves a non-DOGE defendant, OMB, which is indisputably subject to FOIA. Bifurcating proceedings would complicate, not simplify, the judicial process. In sum, no interest in judicial economy is served by staying this case to await a final decision in *CREW*. On the contrary, discovery and a decision from this Court regarding DOGE's agency status serves the interests of economy and justice. *See Dellinger v. Mitchell*, 442 F.2d 782, 788 (D.C. Cir. 1971) (the addition of another view . . . on an issue of national consequence and highest significance provides a different focus that is not necessarily an evil but may, on the contrary, serve like a stereopticon to enhance depth perception).

### III.    A STAY WILL SIGNIFICANTLY HARM AMERICAN OVERSIGHT, BUT DEFENDANTS WILL SUFFER NO HARDSHIP IF THE CASE PROCEEDS.

Because of its indefinite and prolonged nature, the proposed stay puts American Oversight "effectively out of court," *Moses H. Cone Mem'l Hosp*., 460 U.S. at 10 (reversing a stay order with that result, noting that it "amount[ed] to a dismissal"). Hence, the harm a stay would cause American Oversight in these proceedings could not be more clear. And in deciding whether to grant a stay, courts must first consider "'the injury to the party being stayed.'" *Ctr. for Biological*

*Diversity v. Ross*, 419 F. Supp. at 20 (quoting *Belize*, 668 F.3d at 732). If, as here, there is even a "fair possibility" that the nonmovant would be harmed, the movant must then show "'a clear case of hardship or inequity in being required to go forward.'" *Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d at 20 (quoting *Landis*, 299 U.S. at 255). Importantly, the party opposing a stay motion need not show that it will "*necessarily* suffer" harm, because the "burden of demonstrating a hardship that warrants staying properly filed legal proceedings *is on the movant* . . . ." *Nat'l Indus. for Blind v. Dep't of Veterans Affs*., 296 F. Supp. 3d at 140 (emphasis in original).

Recent briefing in another case pending in this District, brought by American Oversight against DOGE under both the FOIA and the Federal Records Act, is informative regarding whether Defendants could meet that heavy burden here. In that case, DOGE moved for a stay of proceedings "until a final decision is rendered on whether [DOGE] is an agency subject to the Freedom of Information Act." *See Am. Oversight v. U.S. DOGE* ("*American Oversight I*"), Case 25-cv-1251-RC (D.D.C. Aug. 5, 2025), ECF No. 15, attached hereto as Exhibit 2. As noted in Plaintiff's opposition to that motion, *see* Plaintiff's Opposition to Motion to Stay Proceedings, *American Oversight I,* ECF No. 17, attached as Exhibit 3, DOGE failed to satisfy its heavy burden to demonstrate a "'clear case of hardship or inequity in being required to go forward.'" *Nat'l Indus. for Blind*, 296 F. Supp. 3d at 137–38. Nor did it demonstrate that judicial economy would be served by a stay. *Compare* Ex 2 at 9–10 *with* Ex. 3 at 18–20. Furthermore, it relied on cases involving stays pending interlocutory appeals in the *same case*, between *the same parties*. *See* Ex. 2 at 7–8. But in those cases, no litigant was deprived of its right to advance its own legal interests, as would happen here; rather, the question was merely whether certain aspects of the litigation should pause while others continue. *See Ready to Win v. Fed. Election Comm'n*, No. CV 22-3282 (RDM), 2023 WL 10512144, at *2 (D.D.C. July 28, 2023) (granting stay pending interlocutory appeal of order

on preliminary injunction); *Blumenthal v. Trump*, No. CV 17-1154 (EGS), 2019 WL 3948478, at *3 (D.D.C. Aug. 21, 2019) (granting stay pending interlocutory appeal of denial of motion to dismiss); *Philipp v. Fed. Republic of Germany*, 253 F. Supp. 3d 84, 86 (D.D.C. 2017) (granting stay pending interlocutory appeal of motion to dismiss).

The only cases DOGE cited supporting a stay based on proceedings between different parties involved *consent* requests for a stay, where all parties agreed that a stay pending appellate resolution of a related case was in their interests and appellate resolution was imminent. *See* Ex. 2 at 5, 8, citing, *inter alia*, *Allina Health Servs. v. Sebelius*, 756 F. Supp. 2d 61, 71 (D.D.C. 2010) (consent request for stay pending case set for argument in D.C. Circuit and decision anticipated within three months and which parties agreed would likely be dispositive of case), and *Univ. of Colo. Health at Mem'l Hosp. v. Burwell*, 233 F. Supp. 3d 69, 87 (D.D.C. 2017) (consent request for stay *by the plaintiff* was appropriate because cases pending in D.C. Circuit would have "preclusive effect"). But that scenario is inapposite: where both parties agree to a stay pending resolution of a core legal issue, no party is deprived of its right to advance its interests.

Similarly, the stays in the four other FOIA and FRA cases against DOGE were unopposed. *See* Minute Order, *Cntr. for Biological Diversity v. Office of Management and Budget*, No. 25-cv-165-BAH (D.D.C. July 10, 2025), ECF No. 26 (granting *consent* order for partial stay); Order, *MSW Media v. U.S. DOGE Service*, No. 25-cv-1933-JEB (D.D.C. July 14, 2025), ECF No. 41 (same); Response to Mot. to Stay, *Project on Gov't Oversight v. Trump*, No. 25-cv-527-JEB (D.D.C. July 18, 2025), ECF No. 26 (plaintiff agreeing to government's requested stay); Minute Order, *Project on Gov't Oversight v. U.S. DOGE Serv.*, No. 25-cv-1295 (D.D.C. July 18, 2025) (granting unopposed motion for stay). The plaintiffs in those cases, like the plaintiff in this case,

have the right to litigate their cases as they choose. But their decisions to consent to a stay have no bearing on this Court's determination of whether a stay would be proper in *this* case.

In sum, DOGE failed to even address its burden in its briefing in *American Oversight I*, instead urging the court to abstain from exercising its jurisdiction until the Supreme Court decides whether DOGE is an agency subject to FOIA—despite the fact that that question is not currently, and may never be, before the Supreme Court. *See* Ex. 2. While it is helpful to have meaningful guidance from the Supreme Court on important questions, to stay a case based on a question that might become pending on an indeterminate timeline in unrelated proceedings is simply not how our court system is set up, nor what stays are meant to enable. *See OCA - Asian Pac. Am. Advocs*., 2025 WL 1393153, at *2 ("the risk of inconsistent opinions between courts when one does not bind the other is no reason to force Plaintiff to 'stand aside'") (quoting *Landis*, 299 U.S. at 255)); *cf. also Hisler v. Gallaudet Univ*., 344 F. Supp. 2d 29, 35 (D.D.C. 2004) ("[S]tating a possibility of inconsistencies in rulings on the same issue, without any explanation on how her claim will suffer any harm, does not establish, in itself, a clear case of hardship." (quotations omitted)); *Nat'l Indus. for Blind*, 296 F. Supp. 3d at 141–42 (possibility of "inconsistent judgments" is not hardship).

### A. American Oversight Will Suffer Significant Harm from a Stay Pending a Final Determination in *CREW*.

A final decision regarding DOGE's agency status in *CREW*—let alone a full, final determination on the merits—will almost certainly not happen for months or years even at the district court level, as that question is not currently before any court in that case. In light of the government's August 28 Petition for Rehearing in *CREW*, the date on which discovery might commence in *CREW* is unknown. And after that date, discovery will likely take months, with the strong possibility of motions practice and potential additional interlocutory appeals before any

merits briefing can occur, much less any hypothetical appeals from any final decision by the district court. Such an unjustified, indefinite stay would cause significant harm to American Oversight. As alleged in the Amended Complaint, the records Plaintiff seeks go to the heart of one of the biggest agency-created crises in American government to date. *See generally* Am. Compl. Any further delay—much less the indefinite one that would result from a stay—harms American Oversight and the public it serves by depriving them of access to records that may shed light on the government's role in creating that crisis.

1. A Stay Improperly Denies American Oversight the Right to Litigate Its Case.

American Oversight has a right to litigate its own case, in its own way, to determine its rights, and courts have long recognized that depriving a party of this right by staying proceedings must be the "rare" exception. *See, e.g., Landis*, 299 U.S. at 255; *Belize*, 668 F.3d at 732. Here, that means American Oversight's properly scoped discovery should promptly proceed so that this Court may determine the threshold jurisdictional question of whether DOGE exercises substantial authority independent of the President and "settle[] the rule of law that will define" Plaintiff's rights. *Landis*, 299 U.S. at 255.

2. American Oversight Will Be Harmed by the Delay in Adjudication of its FOIA Requests.

FOIA exists "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *see also U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 774 (1989) ("FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny . . . ." (italics omitted)). Furthermore, it is axiomatic in the FOIA context that "stale information is of little value," *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir.

1988), and courts have thus sometimes "concluded that a delay in processing of a FOIA request would cause irreparable harm" where it involves "ongoing proceedings of national importance," *Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87, 101 (D.D.C. 2020) (citing *Ctr. for Pub. Integrity v. United States Dep't of Def.*, 411 F. Supp. 3d 5 (D.D.C. 2019)).

American Oversight's FOIA requests seek records vital to ongoing national discussions and debates on issues of high public, media, and congressional interest regarding DOGE's involvement in the firings of inspectors general, its internal structures, and who within DOGE is ultimately responsible for wielding its vast power. In addition, as noted above, this case also involves OMB, which is indisputably subject to FOIA, yet has failed to produce records responsive to Plaintiff's requests or provide a processing schedule as directed by this Court more than five months ago. *See* Standing Order at 2, ECF No. 6 (Mar. 5, 2025) (requiring Defendants to provide a proposed schedule for production of responsive records in the first joint status report). A stay pending a final determination in *CREW* likely would indefinitely delay a final ruling on the merits of American Oversight's FOIA claims against both DOGE and OMB, and thus delay Plaintiff's receipt of records responsive to those requests. This delay further harms American Oversight and thwart's FOIA's purpose and premise. In light of that harm, Defendants would have to show a "clear case of hardship or inequity in being required to go forward." They cannot.

## B. Defendants Suffer No Hardship nor Inequity in Being Required to Go Forward.

Defendants have had ample opportunity in *American Oversight I* to satisfy their burden yet failed to offer a single cognizable harm from being required to go forward in that case. *See* Ex. 2. Nor can they show harm—much less the requisite "clear case of hardship or inequity," *Landis*, 299 U.S. at 255—from being required to proceed through discovery and briefing on the merits in *this* case. It is well settled that "being required to defend a suit, without more, does not constitute a

clear case of hardship or inequity." *Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d at 21 (citation modified); *see also OCA - Asian Pac. Am. Advocs.*, 2025 WL 1393153, at *2 (same); *Asylumworks v. Mayorkas*, No. 20-cv-3815 (BAH), 2021 WL 2227335, at *6 (D.D.C. June 1, 2021) (agency's "expenditure of resources in proceeding with the litigation" was "wholly insufficient to warrant a stay"); *United States v. Honeywell Int'l*, 20 F. Supp. 3d 129, 133 (D.D.C. 2013) ("[T]he time it will take for its witnesses to sit for depositions" was insufficient demonstration of hardship.). "This is 'particularly true of counsel for the United States, the richest, most powerful, and best represented litigant to appear before [the Court].'" *Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d at 21 (quoting *Greenlaw v. United States*, 554 U.S. 237, 244 (2008)) (alteration in original).

The government has taken great pains to argue, and the Supreme Court has agreed, that separate plaintiffs must litigate separate cases, obtaining relief only applicable to their own cases, not for anyone else. *See Trump v. CASA*, 145 S. Ct. at 2552. The government cannot simultaneously insist that each plaintiff must litigate their cases separately *and* that the government's need to defend against each separate case is a hardship. To the contrary, since *CASA* demands that each plaintiff litigate its own case, unrelated plaintiffs cannot be forced to wait for strangers' cases to play out. CREW cannot obtain relief for American Oversight, nor should American Oversight be forced to wait for years to litigate its timely FOIA requests.

In light of the harm that a stay will cause Plaintiff, the absence of a "clear case of hardship or inequity" it will cause Defendants, and the lack of "pressing need" supporting it, no stay should issue, and this case should proceed promptly through discovery to a determination on the merits.

## CONCLUSION

For the foregoing reasons, American Oversight respectfully requests that the Court: (1) grant Plaintiff's motion for discovery; (2) order Defendant OMB to file a status report within ten

(10) days describing its processing schedule for the FOIA requests with OMB file numbers 25-0252, -0253, -642, -641 and -644; and (3) order Defendant OMB to begin rolling production of records responsive to those five requests within ten (10) days of this Court's order.

Dated: September 3, 2025                Respectfully submitted,

*/s/ Elizabeth Haddix*
Elizabeth Haddix
D.C. Bar No. 90019750
David Kronig
D.C. Bar No. 1030649
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(252) 359-7424
Elizabeth.haddix@americanoversight.org

*Counsel for Plaintiff*

18